**In re Michael J. HUGO and Lori L. Hugo, Debtors.**

**Michael J. HUGO and Lori L. Hugo, Plaintiffs,**

v.

**UNITED STATES of America, acting By and Through the FARMERS HOME ADMINISTRATION and Jack Mall Potato Co., Inc., Michigan Potato Shippers and Ore-Ida Foods, Inc., Defendants.**

**Bankruptcy No. 83–00680. A.P. No. 85–9014.**

United States Bankruptcy Court, E.D. Michigan, N.D.

July 17, 1985.

Daniel Opperman, Bay City, Mich., for plaintiffs.

Mark Brissette, Bay City, Mich., for Jack Mal Potato Co., Inc. and Michigan Potato Shippers.

Michael Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., for defendants.

## MEMORANDUM OPINION GRANTING PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

ARTHUR J. SPECTOR, Bankruptcy Judge.

This matter comes before the Court on a motion by the plaintiffs, Michael and Lori Hugo, for partial judgment on the pleadings or, in the alternative, motion for partial summary judgment as to defendant, United States of America. On December 27, 1983, the plaintiffs filed their petition for relief under Chapter 11 of the Bankruptcy Code. At the time they filed their petition, they owed defendant Farmers Home Administration (FmHA) approximately $220,000 [1] for funds loaned to the plaintiffs at various times to finance their farming operations. In order to obtain the loans, the plaintiffs granted the FmHA a second mortgage on their land and security interests in their equipment and crops; however, at the time the petition for relief was filed, no crops were growing on the land described in the security agreements and financing statements. The security agreement on crops recites:

---

1. This is the figure stated in the debtors' Schedule A–2.

DEBTOR HEREBY GRANTS to Secured Party a security interest in Debtor's interest in the following collateral, including the proceeds and products thereof

Item 1. All crops, annual and perennial, and other plant products now planted, growing or grown, or which are hereafter planted or otherwise become growing crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time hereafter if no fixed maximum period is prescribed by State law, on the following described real estate:

| Farm(s) or Other Real Estate *Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town or Other Description |
|---|---|---|---|
| *Michael J. Hugo | 220 | Arenac, MI | 4 Mi. E. of Twining, MI |
| Joseph Fojtik | 27 | Arenac, MI | 1 Mi. N. of Turner, MI |
| Frank Latosky | 55 | Arenac, MI | 1 Mi. N. of Turner, MI |

In the spring of 1984 the plaintiffs again proceeded to plant their potato crop. Pursuant to negotiations between the debtors' counsel and representatives of the FmHA, the latter agreed to "roll over" the loans, or, in other words, to allow the debtors to use the proceeds of the 1983 loans to finance the 1984 planting. One of the conditions for approving the roll-over, of course, was that the FmHA be granted a security interest in the debtors' 1984 crop. Although both the Hugos and a representative of the FmHA entered into a stipulation on April 4, 1984 seeking this Court's approval of the granting of the security interest, no order approving a lien in favor of the FmHA was ever entered by the Court. Nonetheless, the FmHA disbursed some $17,605.57 of proceeds from the 1983 potato crop at various times during 1984 for the planting of the 1984 crop.

After the 1984 potato crop was harvested and sold, the defendants, Jack Mall Potato Co., Inc., Michigan Potato Shippers, and Ore-Ida Foods, Inc. issued checks in payment for the potatoes. Named as payees were the debtor (or debtors) and the FmHA. The FmHA has refused to endorse the checks. This proceeding was commenced by the debtors to compel the FmHA to endorse the checks or release its interest in the proceeds.

Perhaps not aware of a recent change in Michigan law, FmHA does not argue that it had a perfected security interest in the 1984 crop and its proceeds. Instead, it merely argues that the plaintiffs should be estopped to argue the lack of a valid security interest therein. It contends that the funds were disbursed only on the condition that court approval for the transaction be obtained and that a security interest be obtained and perfected; it further argues that it relied on the debtors to take any actions necessary to protect the FmHA's putative security interest. The plaintiffs do not dispute these allegations but argue that the doctrine of equitable estoppel is inapplicable here. We agree with the plaintiffs.

 The grounds for equitable estoppel exist when:

1. a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts;

2. the other party justifiably relies and acts on this belief; and

3. the other party will be prejudiced if the first party is permitted to deny the existence of the facts.

*In re Special Abrasives, Inc.*, 26 B.R. 399, 403 (Bankr.E.D.Mich.1983); *Michigan National Bank v. Kellam*, 107 Mich.App. 669, 681, 309 N.W.2d 700 (1981). The government's offer of proof as to its equitable estoppel is contained in its brief. Although it appears that the FmHA believed that the debtors would take responsibility for securing the FmHA's lien, and that counsel for the debtors apparently gave the FmHA some reason to believe this would be done,

we do not find that the government justifiably relied on the debtors' representations, and for that reason we find estoppel to be inapplicable here.

The FmHA believed that the debtors would seek a court order permitting them to grant a security interest to the FmHA on the 1984 crop, but the debtors were under no duty to do so, nor did they induce the FmHA's inaction with an intent to defraud the government. Moreover, the government had ample opportunity to protect its own interest. First, the parties had executed a stipulation agreeing that the FmHA should receive a security interest in the 1984 crops. The proposed order was not entered at that time because 11 U.S.C. § 364 requires that the obtaining of credit by the trustee be done on notice and a hearing only and that procedure had not yet been instituted. However, the FmHA was not dependent on the debtors to jump through the hoops necessary to perfect its interest; it had the stipulation of the debtors in hand and, as a creditor seeking security for a loan, could have easily taken the initiative and filed a motion for approval of the transaction. Even had the debtors originally indicated that they would obtain the approval, the government could have or should have done so when it became apparent that the debtors were not taking the steps necessary to obtain the authority or to secure the loan.

Moreover, the defendant had a readily available means of ensuring that it did not lend out any unsecured funds: it could simply have refused to part with any money until court approval was obtained and the security interest perfected since it was under no compulsion to disburse prior thereto. The fact that it did advance money to the plaintiffs may have been based on a belief that the documents necessary to perfect its interest would be forthcoming shortly, and the loans may have been made with the best of intentions, but these do not constitute justifiable reliance of the sort necessary to deprive the plaintiffs of an otherwise valid legal argument.

In short, the FmHA may have been operating under a misunderstanding, but it cannot be said that this misunderstanding should estop the plaintiffs from asserting a legal position, where the injured party had available to it sufficient methods of minimizing or avoiding the loss. In the context of attempts to estop a party from using statutes of limitations as a defense, courts have been reluctant to invoke the doctrine in the absence of some sort of intentionally deceptive action by the other party. See *Lothian v. Detroit,* 414 Mich. 160, 177, 324 N.W.2d 9 (1982). We find that perspective equally appropriate in the instant case. There is no allegation that the plaintiffs intentionally or fraudulently caused the FmHA to fail to perfect its security interest in the 1984 crops. Finally, it is not at all certain that the FmHA does not otherwise have a security interest in these checks, see *infra,* and so the third element of the test for application of equitable estoppel may not be met. Accordingly, the motion of the plaintiffs for partial judgment on the pleadings is hereby granted as regards the defendant's claim of estoppel.

■ However, we do not grant final judgment in favor of the plaintiffs, because our review of the pleadings, reasonable inferences made therefrom, and applicable bankruptcy and nonbankruptcy law lead us to think that the FmHA may actually have an enforceable lien on the proceeds. Under the old version of M.C.L.A. § 440.-9204(4)(a); M.S.A. § 19.9204(4)(a): "No security interest attaches under an after-acquired property clause (a) to crops which become such more than 1 year after the security agreement is executed...." [immaterial exception deleted]. This gave rise to the practice of annual execution of "crop liens" for operating loans. If this were still the law in 1983, whatever security interest the FmHA held in the 1983 crops or proceeds would be ineffective as to the 1984 crops and their proceeds, since the security agreement was executed in May, 1983. However, Act No. 369 of Public Acts of 1978, effective January 1, 1979, repealed this subsection of the Michigan Uniform Commercial Code for the reason that it was "... meaningless in operation except to cause unnecessary paperwork ..." Official U.C.C. Reasons for 1972 Change, M.C.

L.A. § 440.9204 (West 1985 Cumulative Annual Pocket Part). It therefore appears that Michigan is now a state in which "no fixed maximum period is prescribed" to limit the applicability of an after-acquired crops clause. Consequently, FmHA's May, 1983 security agreement granted it, by its own terms, a security interest in the 1984 crops.

■ This finding, of course, does not automatically establish FmHA's lien on the debtors' post-petition crops or proceeds thereof, because of 11 U.S.C. § 552. Simply stated, this provision nullifies any pre-petition liens to the extent that they include after-acquired property of the debtor. 4 *Collier on Bankruptcy* ¶ 552.01, 552–1 (15th ed. 1983); *In re All-Brite Sign Service Co., Inc.*, 11 B.R. 409, 4 C.B.C.2d 711, 7 B.C.D. 844 (Bankr.W.D.Ky.1981). This rule is subject to an important limitation: if the after-acquired property of the estate constitutes "proceeds, product, offspring, rents or profits" emanating from pre-petition assets of the debtor, then the lien established by the security agreement attaches to the proceeds to the extent allowed by applicable nonbankruptcy law. Other courts which have applied this section to farm bankruptcies have concluded that if the crops subject to a pre-petition security interest are planted before the commencement of bankruptcy proceedings, then the creditor's lien attaches to crops and proceeds realized post-petition; however, ordinarily, a pre-petition security interest will not cause a lien to attach to crops which are not planted by the debtor until after he or she files for bankruptcy relief. *In re Sheehan*, 38 B.R. 859, 863, 11 B.C.D. 835 (Bankr.S.D.1984); *In re Hamilton*, 18 B.R. 868, 871, 6 C.B.C.2d 482, 8 B.C.D. 1116 (Bankr.D.Co.1982). Thus, unless the 1984 crops are themselves somehow identifiable as proceeds of the 1983 crops and proceeds, any lien which the FmHA might have had under state law is avoided by § 552(a).

■ Whether the 1984 crops constitute proceeds is determined by reference to state law. M.C.L.A. § 440.9306(1); M.S.A. 19.9306(1) defines "proceeds" as "whatever is received upon the sale, exchange collec-

tion or other disposition of collateral, *or proceeds . . .*" (Emphasis added). In other words, proceeds of collateral which in itself constitutes proceeds subject to the security agreement remain covered. Moreover, M.C.L.A. § 440.9306(4); MSA 19.9306(4), provides for the attachment of security interests in cash proceeds in the event of the debtor's insolvency. Section 440.9306(4) states:

In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest

(a) in identifiable noncash proceeds;

(b) in identifiable cash proceeds in the form of money which is not commingled with other money or deposited in a bank account prior to the insolvency proceedings;

(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a bank account prior to the insolvency proceedings; and

(d) in all cash and bank accounts of the debtor, if other cash proceeds have been commingled or deposited in a bank account, but the perfected security interest under this paragraph (d) is

(i) subject to any right of setoff; and

(ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within 10 days before the institution of the insolvency proceedings and commingled or deposited in a bank account prior to the insolvency proceedings less the amount of cash proceeds received by the debtor and paid over to the secured party during the 10-day period.

The effect of this provision is that if the creditor can satisfy any of its various conditions, it may retain its security interest in the resulting proceeds. The ultimate issue in this case, therefore, is whether the checks in question are proceeds of the 1983 crops for purposes of § 9306(4). To determine that, we must first decide whether

the 1984 crops themselves are such proceeds.

Two recent cases illustrate the interplay between state commercial law and federal bankruptcy law in situations involving crop liens. In *In re Kruse*, 35 B.R. 958 (Bankr. D.Kan.1983) the debtors executed a renewal note with Production Credit Association (PCA) for the operation of their farm in 1982 which was secured by a security interest in their crops which was granted a few months previous. The debtors filed their petition for relief on January 4, 1983; on April 25, 1983 they applied to participate in the Department of Agriculture's Payment-In-Kind (PIK) program. PCA claimed to have a security interest in all PIK funds received by the debtors, arguing that these benefits were the proceeds of the crops planted in 1982. Although the court held that PIK benefits could be proceeds of crops, and thus PCA had a lien on benefits received by the debtor pre-petition, it ruled that PCA had no lien on any benefits to which the debtor became entitled only after seeking bankruptcy relief. It held that where there was no entitlement to the benefits pre-petition, those benefits could not be "proceeds" of any pre-petition, collateral and, accordingly, § 552 precluded the attachment of a lien. *Id.* at 966.

Conversely, in *In re Hollie*, 42 B.R. 111 (Bankr.M.D.Ga.1984) the court upheld the FmHA's lien on a post-petition entitlement program benefit. There, the debtor, engaged primarily in dairy farming, received a loan from FmHA in January, 1983, secured by a security interest in, among other things, livestock and products and proceeds thereof.[2] Shortly before filing for bankruptcy relief in January, 1984, the debtors applied to participate in the Commodity Credit Corporation's Milk Diversion Program; they were accepted into the program a few months after the petition. Subsequently the CCC issued a milk diversion check payable to the debtors, but it delivered the check to the Department of Agriculture for the FmHA. The debtors argued that the FmHA had no lien on the milk diversion check by virtue of § 552(b). The court disagreed and held that the government's lien attached to the proceeds. The focus of that portion of the court's opinion was on whether the check was a substitute for proceeds (the court held that it was). There the funds in question were easily traceable; the court implied that otherwise it would have had to employ the § 9306(4) tracing analysis.

The above examples help to illustrate the necessity for determining whether the 1983 crop proceeds are traceable into the crops planted in 1984 and thus into the proceeds of that crop at issue here. The plaintiffs' complaint, attached documents, and motion for judgment on the pleadings do not state the context in which the 1983 crop proceeds were delivered to FmHA. The government's answer also fails to explain how the 1983 proceeds were applied; however, paragraph 3 of the defendant's affirmative defense states that in the spring of 1984 "the United States agreed to let the debtors use $17,605.57 worth of proceeds from the sale of the 1983 potato crop" for planting of the 1984 crop. Just what this statement means regarding the handling and use of the 1983 proceeds is unclear. It is possible that the 1983 proceeds were held in a segregated account by the FmHA for the debtor, and those funds were eventually released. If so, then the funds may well be traceable, and the government's lien may slip through the filter created by § 552. On the other hand, it is equally possible that the 1983 proceeds were received by the FmHA and applied to reduce the debtors' loan balance. If so, then the monies received in 1984 represent new value given and a separate transaction rather than a return of collateral; the pre-petition lien would not attach to the 1984 disbursements, and the government would be unsecured.

There is no need to hypothesize further on the exact course of events regarding the parties' dealings with each oth-

---

**2.** The security agreement executed in that case is the same form (440–4) used by the FmHA in the present case.

er; it suffices to say that the pleadings and documents in the record establish a question of fact, making a judgment on the pleadings on this issue inappropriate. In determining whether to grant a motion for judgment on the pleadings under Rule 12(c), the pleadings of the non-moving party must be read most favorably and its well pleaded allegations taken as true. The motion may be granted only if the moving party is clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir.1973); *Sage International, Inc. v. Cadillac Gage Co.*, 556 F.Supp. 381 (E.D. Mich.1982). Therefore, it will be necessary to conduct further proceedings.

In light of the foregoing, the plaintiffs' motion for judgment on the pleadings is granted insofar as it relates to the FmHA's claim of estoppel, but denied with respect to whether the government has an enforceable security interest in the 1984 crop proceeds. Additionally, the plaintiffs' alternative motion for summary judgment is denied without prejudice. The clerk shall schedule this matter for a pre-trial conference.