In re Ben Horton RANDALL, Donna Lea Randall, Debtors.

In re Chad Isaac RANDALL, Michelle Anne Randall, Debtors.

Ben Horton RANDALL; Donna Lea Randall; Chad Isaac Randall; and, Michelle Anne Randall, Plaintiffs,

v.

BANK OF VIOLA, Defendant.

Bankruptcy Nos. 185–01131, 185–01132. Adv. No. 185/0212.

United States Bankruptcy Court, C.D. Illinois.

Feb. 13, 1986.

Barry M. Barash, Galesburg, Ill., for debtors/plaintiffs.

Daniel L. Bonnett, Rock Island, Ill., for defendant.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

This matter is before the court on the Debtors' complaint to determine the value of the Bank of Viola's security interest in the Debtors' 1985 crops.

A hearing on the complaint was held on September 13, 1985, at which time the following facts were adduced: The debtors are engaged in the business of farming. At the time of the hearing they had approximately 315 acres of crops planted, of which 270 acres were corn and 45 acres were soybeans. The planting of the crops commenced on or about May 3 or May 4, 1985 and was completed on May 25, 1985. 250 acres were planted prior to May 20, 1985, the date the debtors filed their bankruptcy petitions. Subsequent to the filing of the petitions, an additional 35 acres of soybeans were planted and an additional 30 acres of corn were planted. The per acre expense of the corn crop was estimated at $85.00 per acre, and $50.00 of that expense per acre was incurred prior to the date of the filing of the petitions. The per acre expense of the soybean crop was estimated at $65.00 per acre, and $45.00 of that expense was incurred prior to May 20, 1985. It was also estimated that it took approximately one man hour of labor to raise one acre of corn or one acre of soybeans.

The debtors signed up to participate in the 1985 government farm program prior to the March 1, 1985 deadline. Under this program, the loan rate guaranteed to the debtors was $2.57 per bushel of corn and $5.06 per bushel of soybeans.

The average yield for the debtors' farms, given the type of land being farmed and the weather conditions for the 1985 growing season, was 125 bushels of corn per acre and between 40 and 45 bushels of soybeans per acre. An expert witness for the debtors testified that if he was purchasing the debtors' farm in May or June he would value the corn crop at $100 an acre, provided the fertilizer was on. He arrived at this figure by allowing $45 for fertilizer, $15 for seed, $15 for chemicals, and $25 for machinery, labor, and fuel. Following a similar analysis, he would value the soybean crop at $65 an acre.

The Bank of Viola has a perfected first security interest in the 1985 crops.

11 U.S.C. Sec. 552 provides:

"(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. (b) Except as provided in section 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a security party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

■ Courts applying this section to farm bankruptcies have unanimously concluded that a pre-petition security interest is valid as to any crops that were planted before the filing of the bankruptcy petition. However, a pre-petition security interest does not cause a lien to attach to crops which are not planted until after the filing of the petition. *In re Hugo*, 50 B.R. 963, 967 (Bkrtcy.E.D.Mich.1985); *In re Sheehan*, 38 B.R. 859, 863 (Bkrtcy.S.D.1984); *In re Hamilton*, 18 B.R. 868, 871 (Bkrtcy.D.Colo. 1982). Applying these principles to the case at bar, it is clear that the 35 acres of soybeans and 30 acres of corn planted after May 20, 1985, constitute after acquired property within the meaning of Section 552(a). Therefore, the bank does not have any security interest in these crops. Conversely, the bank does have a security interest in the 230 acres of corn and 15 acres of soybeans planted prior to May 20, 1985. This much is not in dispute. What is in dispute is the value of this security interest. The debtors argue that the bank is secure only up to the value of the crops on the day the petition was filed. The bank counters that it is secure in 100% of the 230 acres of corn harvested and 15 acres of soybeans harvested, less the reasonable, necessary costs and expenses of preserving and disposing of the crops.

Both parties cite *In re Hamilton*, 18 B.R. 868 (Bkrtcy.D.Colo.1982), in support of their positions. In this case, the bank and the debtors entered into a security agreement regarding certain crops. The parties subsequently entered into an oral agreement whereby the bank was to receive 50% of the proceeds from all monies received by the debtors upon which the bank held a security interest. The purpose of this agreement was to allow the debtors to remain in business. When the debtors sold the crops and failed to remit the 50 per cent payment the bank demanded 100 per cent. The Court recognized that the bank had a "right to demand 100 per cent of the proceeds." *Id.* at 872. The bank exchanged this right to "100 per cent payment or an uncertain date for the 50 per cent payment at a specific time." *Id.* at 872. The Court concluded that because of the debtor's breach, the bank did not have to accept 50 per cent of the proceeds, but could demand 100 per cent. However, the Court allowed the debtor to recover from

the proceeds the reasonable, necessary costs of maintaining, harvesting, and marketing the crops pursuant to 11 U.S.C. Section 506(c). *Id.* at 873. Under no circumstances however was the debtor allowed to recover his planting costs from the proceeds. *Id.* at 873. Thus, *Hamilton* clearly supports the Bank of Viola's argument that it is entitled to 100 per cent of the proceeds, less reasonable expenses.

Support for the Bank of Viola's position is also found in the recent case of *In re Catton,* 779 F.2d 1242 (7th Cir.1985). In this case, the bank had a secured interest in the debtor's crops, crop proceeds, contract rights, and general intangibles. In March, 1983, the debtor entered into a "payment-in-kind" (PIK) contract with the government, whereby in exchange for not planting specified crops, the debtor was entitled to receive payment in kind after the growing season. He filed for bankruptcy in April. In June, he assigned his rights to the PIK proceeds to Cargill for approximately $200,000. When delivery of the PIK proceeds was made in October, it was made to Cargill. The PIK payment was worth over $300,000 at the time of the delivery. The Seventh Circuit first found that the bank had a lien in the proceeds of the PIK contract. *Id.* at 1248. More importantly for present purposes, the Court found that the debtor's liability to the bank was not limited to the $200,000 received from Cargill in June. Rather, the Court recognized that the bank had "a security interest in more than $300,000 worth of corn," the value of the PIK payment in October. *Id.* at 1249. Applying *Catton* to the instant case, it is clear that the bank's security interest is not limited to the value of the crops on the day the petition was filed.

■ For the foregoing reasons, we find that the Bank of Viola, pursuant to 11 U.S.C. Section 522, is entitled to 100 per cent of the proceeds from the sale of the crops from the 230 acres of corn and 15 acres of soybeans, with deductions by the debtors for the costs of maintaining, har-

vesting, and marketing the crops, pursuant to 11 U.S.C. Section 506(c).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.