**In re Anthony Peter LORENZ, Joseph Andrew Lorenz, and Robert Dean Lorenz, a Partnership, d/b/a Lorenz Brothers Farm, Debtors.**

**Bankruptcy No. 85 B 907.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 21, 1986.

Nancy West Stoecker, Truemper, Ward, Hollingsworth & Wotjecki, Aurora, Ill., for debtors.

Douglas J. Lipke, Lord, Bissell & Brook, Chicago, Ill., for First Nat. Bank of Joliet.

### MEMORANDUM AND ORDER

ROBERT L. EISEN, Chief Judge.

This matter comes to be heard on the motion of First National Bank of Joliet ("Bank") to terminate or modify the automatic stay pursuant to 11 U.S.C. § 362 and to prevent the use of certain cash collateral pursuant to 11 U.S.C. § 363. On January

22, 1985, Anthony Peter Lorenz, Joseph Andrew Lorenz, and Robert Dean Lorenz, a partnership d/b/a Lorenz Brothers Farm ("debtor"), filed its petition for relief under Chapter 11 of the Bankruptcy Code and has continued to operate its business and conduct its affairs as a debtor in possession. Prior thereto, on August 7, 1984, the debtor had executed four agricultural notes with a total principal balance of $795,000. As security therefor, the debtor executed certain security agreements granting the Bank a security interest, inter alia, in the following:

> All crops, growing or to be grown, annual or perennial, including but not limited to corn and soybeans on all farms as described in Exhibit A attached and all products thereof and all accounts arising therefrom.

Presently at issue is whether the Bank has a security interest in the 1985 crop which was harvested post-petition by the debtor in possession and whether the cash received from the sale of the 1985 crop is cash collateral which the Bank can preclude the debtor from using to pay operating and administrative expenses. The proceeds from the 1985 crop are currently being held by the Bank pursuant to an order entered nunc pro tunc October 14, 1985.

The Bank maintains that at least a portion of the proceeds of the 1984 crop were used to buy seed, rent farm land and plant and harvest the post-petition crop. Thus, the Bank contends that the 1985 crop constitutes proceeds of the Bank's collateral to which the Bank's security interest in prepetition crops extends pursuant to 11 U.S.C. § 552(b). In its response, the debtor initially contends that the security agreement executed by the parties does not by its language extend a security interest in crop proceeds to the Bank nor is the cash currently being held by the Bank a product of the crops or an account arising therefrom as those terms are defined under the Uniform Commercial Code. Further, the debtor states that the schedules filed with its petition indicate that the debtor had no cash, bank accounts, crops, seed, or any other personal property not specifically listed, remaining after the 1984 crop was har-

vested and the proceeds therefrom paid to various creditors. Rather, the debtor asserts it incurred additional post-petition unsecured debt in leasing land, planting and harvesting the 1985 crop, and transporting crop and grain for sale. In addition, the debtor argues that no identifiable proceeds from the sale of the 1984 crop are in existence to which a security interest would continue to attach pursuant to § 9–306(2) of the Illinois Commercial Code, Ill.Rev.Stat. ch. 26 ¶ 9–306(2).

The debtor concedes that if the 1985 crop had been in existence on the date of filing, then the Bank would be entitled to assert a lien on the proceeds of the 1985 crop. However, because the 1985 crop was planted and the seed therefor purchased post-petition, the debtor maintains that the Bank has not demonstrated its entitlement to a security interest in the crops harvested in 1985.

### DISCUSSION

■ Section 552 of the Bankruptcy Code provides as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. (b) Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552. Once a bankruptcy petition is filed, section 552 "abrogates the effect of all pre-petition security interests in subsequently acquired property except those security interests in proceeds to the extent recognized by applicable state law." *In re Trans-Texas Petroleum Corp.*, 33 B.R. 67, 69 (Bankr.N.D.Tex.1983). Section 9–306(1) of the Illinois Commercial Code defines "proceeds" to include "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." Ill.Rev.Stat. ch. 26, ¶ 9–306(1). Unless the parties otherwise agree, a security agreement gives the secured party the rights to proceeds provided by section 9–306. Ill.Rev.Stat. ch. 26 ¶ 9–203(3). Thus, the absence of the word "proceeds" in the security agreement does not preclude the extension of a security agreement to cover proceeds of a secured party's collateral, as the debtor contends.

However, the court is not confronted here with the question of who has rights in *proceeds* acquired by a debtor's estate post-petition from the disposition of property acquired pre-petition, a situation addressed by section 552(b). Rather, this is a case of after-acquired *property*, i.e., the 1985 crop, which section 552(a) expressly provides is not subject to any liens created by a pre-petition security agreement. *See In re Sheehan*, 38 B.R. 859, 863 (Bankr.D. S.D.1984). Thus, the proceeds of that after-acquired property, i.e., the cash received from 1985 crop, are not subject to the Bank's security interest. The exception to section 552(a), set forth in subsection (b), refers to proceeds generated by pre-petition collateral, not to proceeds of after-acquired property. *See In re Texas Tri-Collar, Inc.*, 29 B.R. 724, 8 C.B.C.2d 970 (Bankr.W.D.La.1983). Proceeds of collateral may be held to be secured by a pre-petition security interest only if the collateral which produces the proceeds was acquired by the debtor pre-petition. *Matter of Gross-Feibel Company, Inc.*, 21 B.R. 648, 6 C.B.C.2d 1239, 1241 (Bankr.S.D.Ohio

1982). In the case *sub judice*, the debtor has stated that the cash proceeds from the sale of the 1984 crop were no longer in existence as of the date of filing. Inasmuch as the debtor incurred new debt to purchase the seed and lease lands to generate the 1985 crop, the proceeds of that crop were not generated by pre-petition collateral.

The court concludes that this matter is governed by section 552(a). Therefore, the court holds that the Bank's security interest does not encompass cash proceeds generated by the 1985 crop which was planted and harvested after the filing of debtor's chapter 11 petition. Consequently, the proceeds of the 1985 crop are not "cash collateral" as defined in section 363(a) of the Code.[1]

IT IS THEREFORE ORDERED that the Bank turn over the proceeds of the 1985 crop to the debtor for the payment of administrative and operating expenses.

---

1. The Bank also argues that because farm equipment in which it has a security interest was used to harvest and plant the 1985 crop, the 1985 crop is a "product" of that collateral. The court finds this argument without merit under the express terms of the security agreement and the provisions of the Illinois Commercial Code. *See, e.g.*, Ill.Rev.Stat. ch. 26 ¶ 9–109(3).