In re Russell Neil **BIRD** and Rebecca Jennings Bird, Appellants Debtors Plaintiffs,

v.

**PLAINS STATE BANK, Defendant.**

Nos. 86–1016, 86–1024.

United States District Court, D. Kansas.

March 14, 1988.

Barbara J. Coen, McDowell, Rice & Smith, Wichita, Kan., for appellants debtors plaintiffs.

J. Gregory Swanson, McKinley, Miller & Swanson, Liberal, Kan., Edward J. Nazar, Trustee, James Ruance, Hall Turner & Pike, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before this court on appeal of a bankruptcy court's memorandum of decision filed December 30, 1985 (case no. 86–1016), and a journal entry filed January 10, 1986 (case no. 86–1024). The court has consolidated these appeals as they involve identical issues. The debtors/plaintiffs, Russell and Rebecca Bird (Birds), commenced an adversary proceeding against Plains State Bank (Bank) to determine, *inter alia*, whether the Bank had an enforceable security interest in plaintiffs' 1985 milo crop and/or the 1984 Ford truck. The bankruptcy court found that the Bank had a valid and enforceable security interest in the 1984 Ford truck and that the 1985 milo crop was subject to the Bank's lien under the January 4, 1985 security agreement, after the reasonable costs of post-petition cultivation and harvesting were deducted. The plaintiffs/debtors have brought this appeal from those findings. The court denies appellants' motion for summary reversal for appellee's failure to timely file its brief.

The district court's standard of review on a bankruptcy appeal is found in Bankruptcy Rule 8013, which provides in pertinent part: "Findings of Fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." While legal determinations of the bankruptcy court are reviewed *de novo*, the factual findings must be accepted by the district court unless they are clearly erroneous. *In Re Branding Iron Motel Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986). Stated another way, the findings of the bankruptcy court will not be disturbed except for the "most cogent reasons appearing in the record." *In Re Reid*, 757 F.2d 230, 233–34 (10th Cir.1985). In reviewing the factual findings, the district court does not weigh the evidence and should not reverse any finding because it would have reached a different decision in the first instance. The findings will not be reversed if the perception of the evidence is logical and reasonable on the record. *In Re Branding Iron Motel, Inc.*, 798 F.2d at 400. The opportunity for the trier of fact to assess credibility of witnesses is one rationale for the clearly erroneous standard under Fed.R.Civ.P. 52(a) and is an equally applicable rationale to the clearly erroneous standard on appeals from a bankruptcy court's findings. *See Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

*The 1985 Milo Crop*

The plaintiffs/debtors farm leased ground. They filed their petition for bankruptcy on May 20, 1985. All of the evidence presented to the bankruptcy established that the plaintiffs did not begin placing the seed for the 1985 silo crop into the ground until May 21, 1985. Russell Bird testified that the soil preparation work including discing, bedding and furrowing was done in March and April of 1985. All of the Bank's liens result from security agreements entered into by the plaintiffs prior to their filing for bankruptcy.

Plaintiffs contend the controlling provision of the Bankruptcy Code is 11 U.S.C. § 552, which provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the

commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Section 552(a) prevents a pre-petition security agreement from fixing a lien on property acquired after the filing of the petition. *In re Hamilton,* 18 B.R. 868, 871 (Bankr.D. Colo.1982). The issue on appeal is whether the 1985 milo crop is after-acquired property within § 552(a) or "proceeds, product, offspring, rents or profits" of property acquired by debtor before the commencement of the case as to be within the terms of § 552(b). The bankruptcy court found:

> The 1985 milo crop is likewise subject to Bank's lien after deduction of the reasonable cost of post-petition cultivation and harvesting. Clearly, plainting operations including soil preparation, discing and furrowing commenced at least one month before the May 20, 1985 filing of debtors' voluntary petition. For these purposes the crop then came into identifiable existence even though the actual seed implanting did not take place until May 21. It was expressly within the coverage of Bank's January 4, 1985 security agreement and perfecting U.C.C. financing statement.

(Memorandum of Decision of December 20, 1985, at 2.) The bankruptcy court refers to no case law to support the legal conclusion that a crop comes into identifiable existence even though the planting of seed has not actually occurred.

■ In farm bankruptcies, courts have uniformly "concluded that a pre-petition security interest is valid as to any crops that were planted before the filing of the bankruptcy petition. However, a pre-petition security interest does not cause a lien to attach to crops which are not planted until after the filing of the petition." *In re Randall,* 58 B.R. 289, 290 (Bankr.C.D.Ill. 1986), *citing In re Hugo,* 50 B.R. 963, 967 (Bankr.E.D.Mich.1985); *In re Sheehan,* 38 B.R. 859, 863 (Bankr.D.S.D.1984); *In re Hamilton,* 18 B.R. at 871; *see also In re Wallman,* 71 B.R. 125, 128 (Bankr.D.S.D. 1987); *In re Lorenz,* 57 B.R. 734, 736 (Bankr.N.D.Ill.1986). In other words a security interest in crops attaches when crops are planted. *In re Kruse,* 35 B.R. 958, 965 (Bankr.D.Kan.1983). The rationale for this general rule is that a debtor is not deemed to acquire rights in the collateral until the crops are planted. *In re Glinz,* 46 B.R. 266, 272 (Bankr.D.N.D.1984) (and cases cited therein.)

In the present case, the bankruptcy court liberally defined "planting" to mean substantial completion of soil preparation work. Such a definition is overly expansive and ambiguous and creates the potential for inconsistent application. As a verb, plant is first defined as "to put in the ground and cover with soil so as to grow." Webster's Third New International Dictionary at 1731 (Unabridged 1981). The most definite and ascertainable date of planting is when the seed is actually placed in the ground.

The Bank argues that the bankruptcy court acted to prevent the debtors from defrauding the court, the trustee and the Bank. The bankruptcy court did not make any findings of fraud nor suggested that it was exercising any equitable authority. A debtor's planning and preparation for bankruptcy to ensure a later advantageous or beneficial position is not synonymous with fraud. The Bank's reliance on § 552(b) is misplaced, as the 1985 milo crop was property acquired after the filing of the bankruptcy petition. The bankruptcy court erred in holding that the Bank had an enforceable security interest in the 1985 milo crop.

*The 1984 Ford Truck*

■ The debtors acquired the 1984 Ford Truck in November of 1984. The debtors

contend they never signed a security agreement listing this truck as collateral. Russell Bird explains in his affidavit that the relevant document was altered in March 1985 by an appraiser for the Bank to include the 1984 Ford Truck. Russell Bird also avers that by his participation in the appraisal he did not intend to grant the Bank a security interest in the truck. The Bank is listed as a secured creditor on the certificate of title to the 1984 Ford truck. The Birds have claimed the Ford Truck as exempt property, and no objections to that exemption were filed.

Various security documentation was submitted to the bankruptcy court. The security agreement dated March 15, 1984, and signed by the Birds identities the collateral including, "Farm machinery as per attached listing." A financing statement filed January 31, 1985, described the covered property as, "All farm machinery and equipment as per attached list marked Exhibit A." The Exhibit A listing was dated January 28, 1985, and signed by the Birds. The Exhibit A listing referred in typewritten form to a 1983 Ford ½ ton pickup, but the model year and identification number had been scratched out in handwriting and a 1984 model year and a different identification number substituted. Above the debtors' signatures to Exhibit A, the following statement is found: "The above list of machinery and equipment is hereby pledged to the Plains State Bank as collateral security dated January 28, 1985."

The bankruptcy court simply concluded that the Bank had a valid and enforceable security interest in the 1984 Ford Truck stating that the debtors' deposition testimony was consistent with the documentary evidence. The debtors appeal that they never signed a security agreement wherein the 1984 Ford truck was part of the described collateral.

Rather than discussing the various legal arguments advanced by the debtors regarding certificates of title and the effect of K.S.A. 58–312, this court believes the bankruptcy court's finding of fact as to the Bank's security interest is not clearly erroneous. The bankruptcy court could proper-

ly choose to believe that the debtors signed the January 28, 1985, Exhibit A listing with an existing reference to the 1984 Ford truck since the debtors had acquired the truck in November 1984. Furthermore, the requirements of K.S.A. 84–9–203 are satisfied in the Exhibit A listing. It is not clearly erroneous for a court to believe a written document instead of an interested party's explanation of certain changes found therein.

IT IS THEREFORE ORDERED that the memorandum of decision filed December 20, 1985, and the journal entry filed January 10, 1986, are reversed in part, and the case is remanded for proceedings consistent with this order.