## In re Vernon C. DETTMAN and Anita Dettman, individually and dba Dettman Farms, Debtors.

### Vernon C. DETTMAN and Anita Dettman, individually and dba Dettman Farms, Appellants,

### v.

### FRESNO–MADERA PRODUCTION CREDIT ASSOCIATION, et al., Appellees.

BAP No. EC 87–1203 JMeMo.
Bankruptcy No. 185–01473.
Adv. No. 186–0388.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 18, 1987.

Decided March 31, 1988.

---

Adrian S. Williams, Fresno, Cal., for appellants.

Andrew W. Sorensen, Lerrigo, Snyder, Nibler, Moss & Berryman, Fresno, Cal., for appellees.

Before JONES, MEYERS and MOOREMAN, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

### FACTS

On February 19, 1985, the debtors, Vernon and Anita Dettman ("Dettmans") executed security agreements with the Fresno–Madera Production Credit Association ("PCA") as collateral for loans made to them, by PCA. The security agreements cover: "All farm products, equipment, livestock, supplies, feed, inventory, accounts, documents, chattel paper, and general intangibles, now owned or hereafter acquired." PCA properly filed financing statements to perfect the security agreements on February 28, 1985. The Dettmans had previously executed a deed of trust on their vineyards in favor of PCA which also included all the rents, issues and profits of the land.

The Dettmans filed a voluntary Chapter 11 petition on June 10, 1985. Several months later, they applied for and were accepted for the Raisin Industry Diversion Program ("R.I.D.") for the 1986 crop year. R.I.D. is a Federal program which compensates raisin farmers for foregoing production. It is administered by the Raisin Administrative Committee ("R.A.C.") in accordance with regulations governing raisins produced from grapes grown in California. 7 C.F.R. part 989 ("R.A.C. regulations").[1] The amount of compensation disbursed to R.I.D. participants is determined by the quantity of raisins diverted from production, based upon the prior crop year's production yield, at a rate of compensation established at the end of each crop year. R.A.C. regulations require that approved applicants take the necessary measures to preclude grapes from being produced and harvested on the production units no later than June 1 of the relevant crop year. 7 C.F.R. § 989.156(h). Vineyards covered by the R.I.D. program are subject to inspection for compliance by R.A.C. 7 C.F.R. § 989.156(g).

After approval of their three R.I.D. applications in December, 1985 and February, 1986, the Dettmans pruned their vines as required and were inspected for compliance by R.A.C. After finding full compliance, R.A.C. notified the Dettmans that they had completed all requirements for issuance of the raisin diversion certificates. The certificates, worth approximately $76,000.00, were to be issued by R.A.C. to the Dettmans no later than October 5, 1986. 7 C.F.R. § 989.156(i).

Meanwhile, on April 8, 1986, the bankruptcy court modified the automatic stay to permit PCA to foreclosure on the Dettmans' real property including the three vineyards in the R.I.D. program. PCA became the owner of the property through

---

1. The R.A.C. regulations are promulgated by the U.S. Department of Agriculture pursuant to the Agricultural Adjustment Act of 1938, as amended. 7 U.S.C. § 608c.

the foreclosure proceedings on September 12 and September 15, 1986.

On September 23, 1986, PCA requested that R.A.C. issue the Dettmans' 1986 R.I.D. certificates to it instead of to the Dettmans. Although the Dettmans notified R.A.C. that their interest in the 1986 R.I.D. certificates had not been transferred to PCA, R.A.C. issued the certificates to PCA "for account of Vernon Dettman" on October 15, 1986. Thereafter, PCA apparently cashed the R.I.D. certificates.

On November 25, 1986, the Dettmans commenced an adversary proceeding to compel turnover of the R.I.D. certificate proceeds. On February 18, 1986, the bankruptcy court confirmed PCA's security interest in the 1986 R.I.D. certificates and gave judgment for PCA. The Dettmans appealed.

## QUESTIONS PRESENTED

Whether a prepetition security interest in proceeds and general intangibles covers payments for diverting crops from production postpetition.

## DISCUSSION

The question presented here requires a construction of Bankruptcy Code section 552, 11 U.S.C. § 552. Issues of statutory construction are questions of law which we review de novo. *See Trustees of the Amalgamated Ins. Fund v. Geltman Indus.,* 784 F.2d 926, 929 (9th Cir.1986).

Under section 552(a), property acquired by the bankruptcy estate postpetition is free of a prepetition security interest. Section 552(b), however, creates an exception for property that is proceeds of encumbered property that was acquired by the debtor prepetition, if the security agreement covers proceeds of the encumbered property. *See In re Kruse,* 35 B.R. 958, 966 (Bankr.D.Kan.1983).

The court below concluded that PCA had a valid perfected security interest in the Dettmans' 1986 R.I.D. certificate under section 552(b). In making its ruling, the court relied on *In re Munger,* 495 F.2d 511 (9th Cir.1974). There, the court considered whether a prepetition security agreement covering "all crops" and "proceeds" included government subsidy payments. Before filing bankruptcy, the debtor had abandoned part of his crop and applied for abandonment payments. After filing bankruptcy, he applied for other subsidy payments. The debtor had executed a security agreement covering his crops and their proceeds, and an assignment of payments due under a government subsidy program. When the debtor became entitled to the subsidy funds, the creditor/assignee claimed the funds. The trustee challenged the claim and the referee and the district court both agreed with the trustee. The Ninth Circuit, however, held that the subsidy payments were included in the "proceeds" provision of the security agreement. The court noted that the security agreement was drafted with an awareness of subsidy programs and that, because the payments were based upon the amount of crops diverted from production, they were closely connected with the sale of the crops themselves. Thus, the court concluded that the subsidy payments "would be 'proceeds' under the most grudging interpretation of the security agreement." *Munger,* 495 F.2d at 513.

Since *Munger* was decided, the law in this area has been further refined. A security interest in crops attaches when the crops are planted. *See In re Randall,* 58 B.R. 289, 290 (Bankr.C.D.Ill.1986); *Kruse,* 35 B.R. at 965. As a result, under section 552, where crops are planted prepetition, a proceeds clause in a security agreement protects the creditor's interest in the crop and its proceeds postpetition. *See* 11 U.S.C. § 552(b); *Munger,* 495 F.2d at 513; *Randall,* 58 B.R. at 290. However, where crops are planted postpetition, a proceeds clause does not protect the creditor's security interest because the crops were not in existence prior to the bankruptcy filing. *See In re Hugo,* 50 B.R. 963, 968–69 (Bankr.E.D.Mich.1983).

Courts have used the same prepetition/postpetition dichotomy regarding agricultural entitlement payments to debtor/farmers. When a crop is planted prepetition and subsidy payments based on the

crop are later received or where a debtor's entitlement program application is approved prepetition, the entitlement payments are subject to a prepetition security interest. *See Randall,* 58 B.R. at 290; *In re Lee,* 35 B.R. 663, 667 (Bankr.N.D.Ohio 1983); *In re Sunberg,* 35 B.R. 777, 783 (Bankr.S.D.Iowa 1983), *aff'd,* 729 F.2d 561 (8th Cir.1984); *Kruse,* 35 B.R. at 965. However, where a crop that ultimately results in entitlements is planted postpetition or where an entitlement application is approved postpetition, the entitlement payments are free of a prepetition security interest. *See Randall,* 58 B.R. at 290; *Fowler,* 41 B.R. at 963–64; *Liebe,* 41 B.R. at 968–69; *Kruse,* 35 B.R. at 966.[2]

Applying these principles to the case at bar, we conclude that the PCA security interest is valid with respect to the R.I.D. certificates because the Dettmans' grapevines were planted prepetition. We find the instant case analogous to *In re Hollie,* 42 B.R. 111 (Bankr.M.D.Ga.1984). There, the creditor (FmHA) had a security interest in the debtor's "livestock, after-acquired livestock, farm products, increases, replacements, substitutions, and additions." *Id.* at 119. Among the collateral were milk cattle. The court concluded that when the debtor sold the milk produced by the cattle, FmHA's lien attached to the proceeds of the milk and that under section 552(b), FmHA retained its lien on postpetition milk proceeds. *Id.* at 119–20. The court further concluded that FmHA had a valid security interest in the debtor's income from the debtor's participation in the Milk Diversion Program: "The Milk Diversion Program payments ... are substitutes for postpetition milk and proceeds that FmHA would have a lien on but for the program." *Id.* at 122.

Here, the Dettman's grapevines were in existence when they filed bankruptcy as were the cattle in *Hollie.* Here, the pro-

ceeds clause in the PCA security agreement covers the postpetition products of the grapevines just as the proceeds clause in *Hollie* covered milk sold postpetition. Here, the Dettmans entered into the R.I.D. program postpetition as did the debtors in *Hollie.* Here also, the R.I.D. payments are substitutes for raisins that would have been produced postpetition, just as the Milk Diversion payments were substitutes for milk that would have been produced postpetition. We conclude therefore that the PCA security agreement covers the Dettmans' grapevines and any raisins they produce postpetition. As a result, section 552(b) exempts the PCA security interest from the effect of section 552(a) and PCA is entitled to the R.I.D. certificates on the basis of its pre-petition security interest.

AFFIRMED.

---

**2.** We note that some courts treat agricultural entitlement payments as general intangibles rather than proceeds. *See In re Fowler,* 41 B.R. 962 (Bankr.N.D.Iowa 1984); *In re Liebe,* 41 B.R. 965 (Bankr.N.D.Iowa 1984); *Kruse,* 35 B.R. at 966; whereas other courts refuse to make this distinction. *See In re Judkins,* 41 B.R. 369, 371–72 (Bankr.M.D.Tenn.1984); *In re Cupp,* 38 B.R. 953, 955–56 (Bankr.N.D.Ohio 1984); *In re Lee,* 35 B.R. 663, 666 (Bankr.N.D.Ohio 1983); *In re Nivens,* 22 B.R. 287 (Bankr.N.D.Tex.1982). In the case at bar, this distinction is not relevant because the PCA security agreement covers both proceeds and general intangibles. Therefore, classification as one or the other will not affect the parties' rights.