IOWA METHODIST HOSPITAL, Appellee, v. OLE LONG et al., Appellants.

No. 46383.

DECEMBER 14, 1943.

REHEARING DENIED MAY 24, 1944.

Ryan & Ryan, Lehan T. Ryan, and Ronald L. Ryan, all of Des Moines, for appellant.

C. W. Harvey, of Des Moines, for appellee.

MANTZ, J.—On April 15, 1942, in the municipal court of the city of Des Moines, Iowa, plaintiff obtained a judgment against the defendant Homer R. Adcock for the sum of $228.50 with five per cent interest from date, and costs. On April 15, 1943, an execution was issued on said judgment and on April 24, 1943, pursuant to court order, defendant was examined before a referee concerning his property and particularly with regard to certain United States savings bonds. This hearing was, by agreement of the parties, continued until June 15, 1943, when the defendant was further examined upon said matters. Thereafter, the matter was submitted to the lower court and on July 25, 1943, that court entered an order holding that the defendant was the owner of the bonds involved and that all bonds purchased by him out of his wages ninety days prior to June 15th were exempt to him as the head of a family, and that the balance of the bonds not declared exempt be sold by the defendant and that he pay into the office of the clerk of the municipal court the proceeds thereof on or before noon of the 30th day of July 1943.

Both parties have appealed, the defendant from the action

of the court finding him to be the owner of all of the bonds and ordering him to sell certain of them and turn over to the clerk the proceeds of such sale, and the plaintiff from the order of the court finding that certain bonds were exempt to defendant as the head of a family. The defendant having first perfected his appeal will be referred to herein as appellant and plaintiff as appellee.

The abstracts do not set forth the entire proceedings had in the municipal court prior to the examination of the appellant before the referee on April 24, 1943. The application to the municipal court asking for examination of the debtor (appellant) and order of the court granting such application are not shown; neither is there shown the execution which had been issued prior to that time. There is some statement in argument that the execution had been issued but that same had been returned ''unused.''

■ Appellant claims that the appellee did not follow the proper statutory method herein in that he proceeded under the terms of section 11805, chapter 502, Code of 1939, instead of section 11648, chapter 498 of such Code, and claims that section 11805 proceeded under cannot be properly used in the case and therefore the court was in error in making the order and judgment. There is no showing in the record that such contention of the appellant was ever called to the attention of the lower court or that he made any objections to the proceedings at any time prior to the appeal. Boiled down, it is the claim of appellant that before appellee could properly proceed under chapter 502 of the Code there must have been a showing that an execution was issued and that the same was returned unsatisfied. According to the arguments of both parties an execution was issued but such instrument is nowhere set out in the record; neither is the return thereon set out. Appellant has made no showing that an execution was not issued and does not dispute the argument of appellee that one did issue; therefore, we hold that a presumption arises that there was a legal regularity in that respect. However, the record does show that when appellant was being examined by the referee on April 24, 1943, he stated on cross-examination:

"Q. Do you have all of these bonds in some place where they are obtainable so we can get them? A. Yes. Q. Are you willing to bring these bonds to the office of the bailiff of this court and turn them over to him to be levied on in this case or to turn them over to the bailiff if he calls at your home? A. No."

He was then asked the following question:

"Are you ready and willing and have you always been ready and willing to hold these bonds to be subject to any proper orders or proper levies or anything else that is proper and legal? A. Yes."

It is quite evident from these statements of appellant that even had an execution on the judgment been presented to him he would not have turned over to the officer the bonds involved.

This proceeding was brought under chapter 502, Code of 1939, designated as "Proceedings Auxiliary to Execution." Section 11805 of said chapter is as follows:

"Disposition of property. If any property, rights, or credits subject to execution are thus ascertained, an execution may be issued and the same levied upon. The court or judge may order any property of the judgment debtor not exempt, in the hands of himself or others, or due him, to be delivered up, or in any other mode applied towards the satisfaction of the judgment."

It will be noticed that such section is in two parts and it provides two methods for the disposition of property. According to its terms, when property, rights, or credits subject to execution are by examination ascertained, an execution may be issued and the same levied upon. It then provides that the court or judge may order any property of the debtor, not exempt, in the hands of himself or others, or due him, to be delivered up or in any other mode applied toward the satisfaction of the judgment. It will be observed that this section contemplates that, following the hearing wherein the debtor is examined and property is revealed, the court, in its discretion, may order such property not exempt from execution to be delivered up or in any other mode applied toward the satis-

faction of the judgment. Upon the examination of the judgment debtor, if it appeared therefrom that the debtor had property rights or credits subject to execution, the court could then proceed (1) order an execution to issue and a levy made or (2) make an appropriate order dealing with such property, such as ordering it delivered up, if in the hands of the debtor, or in any other mode apply same toward the satisfaction of the judgment.

The examination revealed that the appellant was the owner of certain bonds, fourteen in number, and thereafter the court made an order under the second alternative as set out above. We think that in so doing the court followed the plain intent of the statute.

■ II. The principal dispute as set out in argument relates to the ownership of the fourteen defense bonds held by appellant at the time the case was tried in the lower court. That court, in its judgment and decree on the question of the ownership of said bonds, used the following language:

"The Court finds that all bonds that were purchased [with wages earned within] ninety days prior to the 15th of June [1943] are exempt to the defendant as head of a family, on the same basis that money in the bank would be exempt, for the reason that these bonds are peculiar in that they are cashable in sixty days after their purchase. This provision in the bonds is new and probably never used in the United States before, therefore being liquid, could be treated as cash earned within the ninety days last past. The balance of the bonds, all of which are payable to the defendant or his wife, the Court finds are the property of the defendant; that a person must be just before he is generous; that these bonds cannot be cashed except upon the request or signature of the defendant or his wife. It is the opinion of the Court that the defendant could not place his property in any form so that it could not be reached by judicial process, or judicial order, to the end that it could not be applied upon a defendant's debts. In view of the fact that some of these bonds have not yet been delivered by the Government, and which in due course will be delivered to this defendant:

"It is Therefore Ordered that the defendant sell the balance

of the fourteen bonds heretofore not declared exempt to him, and pay the proceeds into the office of the Clerk of the Municipal Court by noon of the 30th day of July, 1943.''

The effect of this order was to hold that nine of the bonds held by appellant were liable to the satisfaction of appellee's judgment and that the remaining five were exempt to appellant as the head of the family as being purchased with his wages earned within ninety days prior to June 15, 1943.

The record shows that all of the fourteen bonds were purchased and paid for out of the wages of appellant. The lower court found that appellant was the owner of all of them. We believe that there was ample evidence in the record to sustain the lower court in making such order. These bonds were acquired by reason of a ten per cent deduction from his earnings at the United States Rubber Company ordnance plant near Des Moines. Appellant stated that he had worked at such plant for about seventeen months and that his average monthly earnings were $225 per month and that approximately ten per cent of such amount was deducted and used to purchase bonds for him. These bonds were issued to Homer R. Adcock, 2812 Southwest Twelfth Street, Des Moines, or Mrs. Dorothy B. Adcock. Each bond had a value of $25 at its ten-year maturity date. Appellant, at the examination on April 24, 1943, stated that the bonds held by him had an approximate value of $250, but at the later examination stated that by this he meant the maturity value. At the examination of appellant on April 24, 1943, concerning the ownership of these bonds, he testified:

''I work at the United States Rubber Plant, and my salary is $225.00 a month. Q. Do you own any government bonds? A. Well, you mean like we take ten per cent? Q. Yes. A. Yes. Q. How much do you have in those? A. Well, approximately around $250, that is approximate. Q. In your name? A. Sir? Q. In your name, are they? A. Yes, sir.''

At the hearing on June 18, 1943, appellant again testified as to the ownership of these bonds, and on direct examination there was the following:

''Q. Are there any arrangements between yourself and your

wife in regard to how these bonds were to be payable? Mr. Harvey: I object as incompetent, irrelevant and immaterial under all the issues in this case, and further calling for an opinion and conclusion of the witness, and further that the answer will be in the nature of a self serving declaration. * * * A. Yes, there was. Q. What was that agreement between yourself and your wife? Mr. Harvey: Let the same objection stand as made to the previous question. A. They were made—we were both to have half of them. Q. In other words, each of you were to own one-half interest in the bond? A. Right. Mr. Harvey: I move to strike the answer as being an opinion and conclusion of the witness, a self serving declaration, and not a statement of any fact. * * * Q. The salary, however, was wholly your salary, is that right? Mr. Harvey: I object as leading and suggestive, an attempt on the part of counsel to testify for the witness. A. At the time it was taken out of my salary at the start, as far as having any interest, she didn't have any interest, because it was taken entirely out of my salary but, like I say, our arrangement was we were each to have half of it. Q. She was to hold half the bonds and you were to hold half the bonds, own them together, jointly? A. That is right, jointly. Mr. Harvey: I move to strike the answer as an opinion and conclusion of the witness. Q. Has that arrangement been carried out by you? A. Yes, sir. Q. Was it pursuant to that arrangement, the designation was made they are payable to Homer R. Adcock or Mrs. Dorothy B. Adcock? Mr. Harvey: I object as leading and suggestive, calling for an opinion and conclusion of the witness, calling for a self serving declaration, and I move to strike the answer for all the reasons urged. A. That is why all of the bonds completely, from the first bond through on all the bonds I have, are made out that way. Mr. Harvey: I move to strike that answer for the same reasons urged to the previous answer. Q. In what manner did you designate as to whom these bonds were to be payable? A. Payable either to my wife or myself.''

It will be seen that on April 24, 1943, appellant claimed that he was the owner of the bonds involved and that he had them in his possession. On June 18, 1943, he claimed that he had an agreement with his wife that the bonds purchased were to

be owned jointly by him and his wife, each having a one-half interest in each bond. All of the testimony given by the appellant on the last-named date, concerning the agreement as above set forth, was received subject to the objections as set forth therein. We are of the opinion that some of the objections were good, especially in regard to the conclusions called for in the questions and given in the answers.

The wife, Dorothy B. Adcock, did not testify at the hearing and she has never made or filed any notice or claim of ownership in the bonds. Although more than three months had elapsed between the date of the order for the examination of the debtor and the judgment of the lower court on July 25, 1943, we find she had taken no action therein.

Even assuming that the testimony of the appellant given on June 18, 1943, regarding the ownership of the bonds was competent, still there was ample evidence before the court to sustain its holding to the effect that the bonds were owned by appellant. At the first hearing he said without equivocation that he owned these bonds and that his wages had purchased them and that they were in his possession. At the last hearing he directly contradicted himself by saying that he and his wife had agreed to a joint ownership of such bonds. There is no question but that all of these bonds were purchased with wages earned by appellant. The court passed upon his testimony and decided that he was the owner of the bonds involved and we do not think it committed error in so doing.

In proceedings of this character the findings of the court below upon the question of fact presented will be given the same weight as the verdict of the jury. Bell v. Courteen Seed Co., 197 Iowa 120, 196 N. W. 1006; Staton v. Vernon, 209 Iowa 1123, 229 N. W. 763, 67 A. L. R. 1200.

It is our holding that in said proceedings the proper procedure was followed; also that the order and judgment of the court as to the ownership of the part of the bonds ordered sold and the proceeds turned over to the clerk of the municipal court was not error in the respect claimed by appellant.

The appellant, in argument, has made certain statements from which it might be inferred that, as these bonds were purchased out of the wages of a person engaged in vital and essen-

tial war work, the same would not be subject to levy for the satisfaction of judgment debts. This matter is not made as a direct claim of error and no authority is cited to sustain it. However, certain regulations governing United States savings bonds, and a letter from the general counsel of the treasury department have been furnished us, and an examination thereof shows that said bonds may be levied upon in valid judicial proceedings. While the point was not directly involved in this proceeding, we have considered it and find that even if properly before us it has no merit.

III. The appellee has appealed from that part of the judgment of the lower court which held that, ''The court finds that all bonds that were purchased [with wages earned within] ninety days prior to the 15th of June [1943] are exempt to the defendant as the head of a family, on the same basis that money in the bank would be exempt, for the reason that these bonds are peculiar in that they are cashable in sixty days after their purchase.''

The appellee claims that the court erred in holding that the bonds purchased with wages earned within ninety days prior to June 15, 1943, were exempt to the debtor. Under this claim the appellee argues (a) bonds are not exempt under the Iowa exemption statute, and (b) property which in itself is not exempt from execution does not acquire an exempt character because it is purchased with or taken in exchange for money or property which is exempt. The record is without dispute that at all times involved in this matter appellant was the head of a family and as such could claim his legal exemptions. It is the wise policy of the law to construe exemption statutes liberally but it is not the province or power of the court to enlarge or extend the provisions of the legislative grant. Under section 11760, Code of 1939, the general exemptions allowed to a resident head of a family are set out. Various properties exempt are therein described. Bonds are nowhere mentioned therein. The property or rights declared exempt by statute by ordinary rules of construction are limited to such as are therein set out. It is the general holding of the cases that the sale of exempt property causes the proceeds thereof to lose their exempt character. Evi-

dently this was recognized by the legislature when it enacted section 10154, which provides that in the event of the sale of a homestead and the investing of the proceeds in a new homestead, the latter would acquire the homestead character to the extent in value of the old, provided that the owner does so within a reasonable period of time. Benham v. Chamberlain, 39 Iowa 358; Campbell v. Campbell, 129 Iowa 317, 105 N. W. 583; Vittengl v. Vittengl, 156 Iowa 41, 135 N. W. 63.

Had appellant retained in his possession his earnings for the period of ninety days prior to June 15, 1943, they would have been exempt to him as head of a family. He did not do so but used such earnings to purchase bonds, something not exempt to him as such head of a family.

We hold that after appellant invested his wages in bonds these wages lost their exempt character and that the bonds so purchased are subject to seizure by judicial process. The court had before it the matter in controversy and had jurisdiction to make appropriate orders with relation to these bonds. We think the court erred in holding that five of the bonds were exempt. Therefore, on appellant's appeal the case is affirmed and is reversed on appellee's appeal.—Affirmed in part; reversed in part.

All JUSTICES concur.