In re Jon E. FOWLER and
Karla J. Fowler, Debtors.

THORP CREDIT, INC., Plaintiff,

v.

Jon E. FOWLER and Karla J.
Fowler, Defendants.

Bankruptcy No. 81–00366.
Adv. No. 82–0047.

United States Bankruptcy Court,
N.D. Iowa.

April 19, 1984.

E. Ralph Walker and Marilyn Scheer of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, Iowa, for plaintiff.

Mary Clemen and Gregory Kingery of Novak, Kubicek & Rosser, Cedar Rapids, Iowa, for defendants.

*Findings of Fact, Conclusions of Law, and ORDER re Security Interest in Payment-in-Kind Entitlements*

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is a Complaint for relief from the stay and reclamation. With respect to the portion of the Complaint regarding the stay, this Court's final order issued on April 11, 1984, effectively terminated all dispute between the parties. The remaining controversy ripe for judicial determination concerns the extent, validity, and applicability of a perfected security interest in favor of Thorp Credit, Inc. (Thorp) and against Jon E. and Karla J. Fowler (Debtors). Attorney Marilyn Scheer appeared for Thorp and Attorney Mary E. Clemen appeared on behalf of the Debtors. The matter was submitted via a Stipulation of Facts and Issue. Being fully advised and pursuant to F.R.B.P. 7052, this Court now makes the following Findings of Fact, Conclusions of Law and Orders.

The Debtors filed their Voluntary Chapter 11 Petition on December 21, 1981. In January 1983 the Department of Agriculture announced the implementation of the Payment-in-Kind program (PIK). The Debtors applied to participate in PIK and on March 22, 1983, they were informed that their application was accepted. The PIK entitlement due the Debtors totaled 9,723 bushels of corn.

Thorp holds a properly recorded mortgage and a validly perfected UCC blanket security interest in the Debtors' property. The realty securing the mortgage has since been foreclosed. A deficiency of $36,869.07 remains unpaid, however. Further, most of the tangible personal property has been sold and the proceeds applied against Thorp's security interest. Pursuant to an earlier Order of this Court, $8,000.00 of the PIK proceeds were paid to Thorp as a post-petition replacement lien. The issue at bar focuses on the remainder of the 9,723 bushels of PIK corn.

The security agreement at bar, executed on March 26, 1979, provides:

> [Debtors] hereby grant [Thorp] a security interest in...
>
> All of the following property of the Debtors, whether now or hereafter acquired: all accounts, accounts receivable, *contract rights*, goods, personal property..., ·equipment, machinery, fixtures..., inventory, materials and supplies..., livestock and farm products, crops, grain and all other properties including *general intangibles....*

(Emphasis added). The first issue is what interest, if any, does Thorp have in the PIK corn. To resolve this issue, inquiry must initially focus on 11 U.S.C. § 552:

> (a) Except as provided in subsection (b) of this section, *property acquired* by the estate or by the debtor *after the commencement* of the case *is not subject to any lien resulting from any security agreement entered into* by the debtor *before the commencement* of the case.
>
> (b) Except as provided in sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and *if the security interest* created by such security agreement *extends to property* of the debtor *acquired before the commencement* of the case *and to proceeds*, product, offspring, rents, or profits of such property, *then such security interest extends to such proceeds*, product, offspring, rents, or profits *acquired* by the estate *after the commencement* of the case *to the extent provided by such security agreement and by applicable non-bankruptcy law*, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

(Emphasis added). Section 552(a) thus states the general rule that property acquired post-petition is not subject to a pre-petition lien. In the case at bar, the lien was created pre-petition. On the other hand, the PIK entitlement came into existence post-petition. Indeed, the program and the acts qualifying the Debtors (i.e. signing up and approval) were all effectuated post-petition. Following this general rule, therefore, it would appear that Thorp's lien does not extend to the PIK corn.

The § 552(a) general rule is, however, subject to the exception provided in § 552(b). In succinct terms, the § 552(b) exception [1] provides that if the pre-petition lien covers pre-petition property *and* the proceeds of such pre-petition property, then the pre-petition lien extends to such proceeds. To determine whether this exception applies to Thorp's security interest, the question of what property is covered by the security agreement must be answered.

The PIK program conceivably created at least two types of property interests. The first is that the contract entered into between the Debtors and the Department of Agriculture/Commodity Credit Corp. created a contract right. The second is of the entitlement itself, i.e., the 9,723 bushels of PIK corn. The critical observation here is that the Debtors' contract right, PIK entitlement, or whatever property interest arising from the PIK program was *not* acquired by the Debtors before the filing of the bankruptcy petition. In other words, the Debtors' interest in the PIK corn is *not* "property of the debtor acquired before the commencement of the case." Because § 552(b) applies to "property of the debtor acquired before the commencement of the case and to proceeds... of such property," § 552(b) has no application to the situation at bar. The general rule of § 552(a), not the § 552(b) exception, should therefore govern the rights of the parties herein.

This Court's conclusion is not contrary to that reached in *In re Sunberg*, 35 B.R. 777 (Bankr. S.D. Iowa 1983), *aff'd*, 729 F.2d 561 (8th Cir.1984). In *Sunberg*, the Debtors

---

**1.** This exception is yet subject to the provisions of 11 U.S.C. §§ 363, 506(c), 544, 545, 547 and 548. *See* 11 U.S.C. § 552(b). None of these provisions are applicable to the case at bar. They will, therefore, not be discussed.

filed their bankruptcy petition *after* they had signed up for and received approval to participate in the PIK program. *Id.* at 780. Indeed, the *Sunberg* court specifically noted that "the contract, general intangible collateral, was in existence *prior to bankruptcy.*" *Id.* at 783. Thus noting, *Sunberg* held that § 552(b) rendered the PIK payment subject to the creditor's pre-petition lien. *See id.* at 784.

Second, this Court's conclusion is supported by that reached by the one [2] other court examining the same issue. In *In re Kruse,* 35 B.R. 958, 960 (Bankr.D.Kan. 1983), appeal docketed (D.Kan.1984), the debtors entered into the PIK program three months *after* filing their bankruptcy petition. Focusing on the effect of § 552 on the creditor's rights in the post-petition PIK corn, the court held:

> Pursuant to § 552, property acquired by the estate after commencement of the case is free of a security interest unless the post-commencement property is proceeds of encumbered property acquired by the debtor before the commencement of the case. In *In re Sunberg,* the debtor acquired rights under the PIK agreement *before* commencing his bankruptcy case. The rights under the PIK agreement was a general intangible in existence *before* the bankruptcy petition was filed. Grain received by the debtor on account of his PIK agreement was proceeds of the PIK agreement acquired after the bankruptcy petition was filed, and pursuant to § 552(b), the creditor's security interest continued in the proceeds (PIK grain). By contrast in the instant case, the debtors had no rights under the PIK program when they commenced their bankruptcy case. They did not enter PIK until *after* commencing their bankruptcy case. To this court's knowledge, no court has ever held that the rights under PIK, or any other entitlement program, *stemming from an agreement not to grow crops,* are proceeds of anything. Of what could it be proceeds? These payments were made if the debtors agreed *not* to create collateral. The only "collateral" available to PCA is the general intangible in the nature of the right to receive payments under PIK. Thus, the only collateral there is, the rights under PIK, the general intangible, were acquired by the estate after the petition was filed and pursuant to § 552(a), was free of any pre-bankruptcy liens. If the collateral itself was free of pre-bankruptcy liens, then any proceeds of the collateral must also be free of pre-bankruptcy liens, 11 U.S.C. § 552(b).

*Id.* at 966.

In sum, this Court concludes that Thorp's security interest does not extend to the Debtors' PIK entitlement. This conclusion therefore renders moot any discussion on the manner in which the PIK corn may be applied against Thorp's deficiency judgment or other claims.

The sole remaining question is how the $8,000 replacement lien previously ordered should be applied. It appears to this Court that the replacement lien was granted to compensate Thorp for certain crops subject to Thorp's UCC blanket lien that had been sold by the Debtors. In other words, the replacement lien does not appear to affect Thorp's mortgage on the realty. IT IS THEREFORE ORDERED that the $8,000.00 should be applied to that portion of the debt covered by Thorp's UCC blanket, not the mortgage.

IT IS FURTHER ORDERED AND DECREED that Thorp Credit Inc., other than those represented by the $8,000.00 payment previously ordered, has no interest in the Debtors' entitlement under the Payment-in-Kind program. The Complaint filed by Thorp is therefore denied and dismissed to that extent.

---

**2.** To this date, two other reported decisions examining the applicability of § 552 to PIK proceeds can be found. In one decision, the debtors, like the ones in *Sunberg,* signed up for the PIK program *before* they filed bankruptcy. *In re Lee,* 35 B.R. 663, 664 (Bankr.N.D.Ohio 1983). In the other, the decision did not reveal when the debtors entered the PIK program. *In re Preisser,* 33 B.R. 65 (Bankr.D.Colo.1983).