**In the Matter of Chester L. MATTICE, Jr., Gloria J. Mattice, Engaged in Farming, Debtors.**

**Bankruptcy No. 86–3351–W.**

United States Bankruptcy Court, S.D. Iowa.

Dec. 22, 1987.

James A. Campbell, Council Bluffs, Iowa, for debtors.

Linda A. Reade, Asst. U.S. Atty., Des Moines, Iowa, for FmHA.

Charles L. Smith, Council Bluffs, Iowa, Trustee.

### ORDER ON MOTION TO AVOID LIENS

LEE M. JACKWIG, Bankruptcy Judge.

On May 26, 1987 a telephonic hearing was conducted in Des Moines, Iowa concerning an objection by the Farmers Home Administration (FmHA) to the debtors' motions to avoid security interest in exempt property and to release exempt property held or impaired by the trustee. The debtors' motions were filed on April 1, 1987. The FmHA lodged its objections to the motions on April 15, 1987. James A. Campbell appeared on behalf of the debtors and Linda A. Reade, Assistant U.S. Attorney, appeared on behalf of the FmHA. The case has been submitted on a stipulation of facts, briefs and certain documents relating to government program payments.

The debtors filed a joint petition on December 23, 1986. They seek to avoid certain security interests held by the Iowa State Bank and the FmHA. A stipulated order reveals that the parties have resolved their differences with respect to the implements. The only remaining issue concerns the government payments. The debtors assert that the trustee has taken action to prevent delivery of government payments to them. The debtors further contend that the payments were acquired postpetition and therefore are not part of the estate and thus not subject to prepetition security agreements. The debtors argue in the alternative that the payments are exempt as wages under Iowa's exemption statute. The FmHA responds by maintaining that ownership interest in the 1987 program payments is unclear; that 1986 PIK certificates are subject to the FmHA's prepeti-

tion security interest; and that government payments are not exempt property under Iowa Code Chapter 627.

## FACTUAL BACKGROUND

The documents submitted by the FmHA show that the debtors enrolled in the 1986 Feed and Grain Program (Program) on March 12, 1986. This application was approved on May 9, 1986. The debtors enrolled in the 1987 Program on December 9, 1986 and this application was approved on December 31, 1986. The proof of claim filed by the FmHA shows that the debtors borrowed $38,120.00 from the FmHA in April of 1985. The FmHA and the debtors executed a security agreement at that time which granted the FmHA a security interest in, among other things, contract rights and general intangibles. Under the Program, producers receive deficiency payments and price support loans for compliance with certain requirements such as reducing crop acreage. Some of the program payments are made in cash. Others are made in the form of negotiable certificates that can be redeemed in cash or commodities.[1] The government is holding a certificate of $283.30 and a check of $270.85. Both of these payments were made under the 1986 Program. The debtor anticipates receiving 1987 program payments and further 1986 program payments during the 1987 crop year.

## DISCUSSION

### I.

### *Program Payments*

Determining whether the FmHA has an enforceable security interest in the program payments begins with *Matter of Halls*, 79 B.R. 417 (Bankr.S.D.Iowa 1987). In that case, this court examined statutory and regulatory provisions governing payments made under the Program. The court found that these provisions mandated that program payments made in cash and

related to crops that the creditor had no part in making could not be subjected to a creditor's security interest.

■ The record in this case reveals that the debtors last borrowed from the FmHA in 1985. There is no evidence indicating that the FmHA assisted the debtors in making either the 1986 or the 1987 crop. Therefore, the 1986 and 1987 program payments made in cash are not subject to the FmHA's security agreement.

■ This court in *Halls* also found that federal regulations prohibited creditors from encumbering certificates. 7 C.F.R. section 770.4(b) provides:

> (b) Liens, encumbrances, and State law.
> (1) The provisions of this section or the commodity certificates shall take precedence over any state statutory or regulatory provisions which are inconsistent with the provisions of this section or with the provisions of the commodity certificates.
> (2) Commodity certificates shall not be subject to any lien, encumbrance, or other claim or security interest, except that of an agency of the United States Government arising specifically under Federal statute.

Under subsection (2), an exception to the encumbrance prohibition exists for a United States agency whose lien arises specifically under federal statute. The FmHA, an agency of the United States, has not pointed to any federal statute which would permit it to encumber certificates. Hence the court must conclude the certificate in question is free from the FmHA lien.

### II.

### *Operation of Section 552*

■ Assuming for analysis that the FmHA's lien had attached to the 1986 program payments, the operation of 11 U.S.C. section 552 would have prevented the liens from attaching to the 1987 program pay-

---

**1.** Certificates may be "generic" or commodity-specific. 7 C.F.R. section 770.4(g). If generic, the certificate may be exchanged for any commodity made available by the Commodity Cred-

it Corporation. *Id.* If commodity-specific, the certificate may be exchanged only for the kind and quantity indicated on the face of the certificate. *Id.*

ments under the facts of this case. That section provides:

> (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
>
> (b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

*Id.* This statutory scheme in essence means that a bankruptcy filing severs prepetition security interests with one important exception—security interests in property acquired prior to filing extend to proceeds of such property acquired by the estate after filing. The hypothetical question is whether this exception would have been applicable to the 1987 program payments but for the disposition in Part I.

The court in *In re Fowler,* 41 B.R. 962 (Bankr.N.D.Iowa 1984) addressed a similar question. In that case the debtors applied for and were accepted into the 1983 program after they had filed bankruptcy. The court ruled that a creditor had no interest in the payments made under the 1983 program. The court reasoned that section 552(b) did not apply to the case because the debtors did *not* acquire rights to the program benefits until after the commencement of the bankruptcy case. The court noted that section 552(b) only applies to "property of the debtor acquired before the commencement of the case and to proceeds ... of such property."

The only difference between *Fowler* and the instant case is that in *Fowler* the debtors had enrolled in and were accepted in the program after filing bankruptcy and in this case the debtors signed up for the program before filing but were accepted after filing. The distinction with respect to the timing of the application is not significant; the similarity with respect to the acceptance is important. The debtors had no rights in the 1987 program payment until their application was approved, which occurred after the filing. Therefore, their rights arose after the commencement of the case. The creditors in this action have no interest in the 1987 program payments.

## III.

*Scope of Iowa Code Section 627.6(9)(c)*

Under 11 U.S.C. section 541(a)(1), the 1987 program payments were not part of the bankruptcy estate because the debtors had no legal right to the property until after commencement of the case. However, the 1986 payments were part of the estate since the debtors obtained legal rights to the 1986 program prior to filing. The debtors contend that the government payments should be considered wages and therefore exempt under Iowa's exemption statute.

Iowa Code section 627.6(9)(c) provides in part that a debtor may hold exempt from execution "[i]n the event of a bankruptcy proceeding, the debtor's interest in accrued wages....". In construing this statute, the court is mindful of the well-settled proposition that Iowa's exemption statute must be liberally construed. *Frudden Lumber Co. v. Clifton,* 183 N.W. 2d 201, 203 (Iowa 1971). Yet, this court must be careful not to depart substantially from the express language of the exemption statute or to extend the legislative grant. *Matter of Hahn,* 5 B.R. 242, 244 (Bankr.S.D.Iowa 1980), *citing Wertz v. Hale,* 212 Iowa 294, 234 N.W. 534 (1931)

and *Iowa Methodist Hospital v. Long*, 234 Iowa 843, 12 N.W.2d 171 (1944).

Research revealed no Iowa cases interpreting the word "wages" under Iowa's current exemption statute. However, the Iowa Supreme court has interpreted "earnings" under prior versions of the exemption law. *See, Johnson v. Williams*, 235 Iowa 688, 17 N.W.2d 405 (1945) (interpreting former Iowa Code section 11763 (1939) which provided "[t]he earnings of a debtor, who is a resident of the state and the head of a family, for his personal services, or those of his family, at any time within ninety days next preceding the levy, are exempt from liability for debt."). In that case, the court defined "earnings" as "the fruit or reward of labor—the price of services performed". *Id.* 17 N.W.2d at 406 (citing *Mitchell v. Chicago R.I. & P.R. Co.*, 138 Iowa 283, 291, 114 N.W. 622 (1908)). A court from another jurisdiction has suggested that "earnings" has a broader application than "wages". *Russell M. Miller Company v. Givan*, 325 P.2d 908, 909 (Utah 1958), *see also* Note, *State Wage Exemption Laws and the New Iowa Statute—A Comparative Analysis*, 43 Iowa L.Rev. 555, 564 (1958). Another court has defined wages as the compensation for personal services of some kind. *Williams v. Sorenson*, 106 Mont. 122, 75 P.2d 784, 787 (1938).

Determination of the exemption issue does not turn on the above distinctions. Even if an expansive interpretation is given to the term "wages", the government payments involved in this case would not qualify as such. Entitlement to program payments does not require a farmer to render services to the government or to anyone else.[2] For example, landlords typically perform little or no labor on rented acres. Yet, they are eligible for payments under the regulations.[3] The purpose of farm programs is to protect farm income from the effects of the depressed markets for American products, the general world-wide recession of the early 1980's and the surplus of commodities. H.R.Rep. No. 99–271, Part I, 1st Sess. 8–9, *reprinted in* 1985 U.S.CODE CONG. & ADMIN.NEWS 1103, 1112–1113. The lack of any relationship between program payments and a farmer's labor leads the court to conclude that program payments are not wages for purposes of Iowa Code section 627.6(9)(c).

Although the 1986 program payments were non-exempt assets, no distribution to unsecured creditors can be made in this case. An examination of the file reveals that on January 26, 1987, the trustee filed an abandonment of burdensome assets and report of no assets. No creditor objected to this filing. Given that the trustee no longer has any property to administer, any 1986 payments cannot be distributed to the FmHA as an unsecured creditor.

## CONCLUSION AND ORDER

WHEREFORE, based upon the foregoing analysis, the FmHA has no viable interest in or claim to the program payments in question.

THEREFORE, the government's objection is overruled and IT IS HEREBY ORDERED that the payments in issue be released to the debtor immediately.

---

2. The major requirement for program eligibility is compliance with the acreage reduction, set-aside or diversion requirements. *See* 7 C.F.R. sections 713.51–53.

3. "Producer" is defined as a "person who as owner, landlord, tenant or sharecropper, shares in the risk of producing the crop, or would have shared had the crops been produced." 7 C.F.R. section 713.4(u). The contracting procedures set up by the CCC speak of "producers". *See* 7 C.F.R. sections 713.49 and 713.50.