**In the Matter of Donald Dean SEARS, Daphne Alice Sears, Debtors.**

**Bankruptcy No. 98–01073–CJ.**

United States Bankruptcy Court, S.D. Iowa.

March 8, 2000.

David A. Morse, Des Moines, IA, for Debtors.

Thomas L. Flynn, Des Moines, IA, Ch. 7 Trustee.

Jim R. Sween, Eldora, IA, for Creditors, (Cepelaks).

## MEMORANDUM OF DECISION

LEE M. JACKWIG, Bankruptcy Judge.

Chapter 7 Debtors Donald and Daphne Sears claim a homestead exemption in one-half acre and the buildings thereon. Judgment Creditors Jerry Cepelak, Jr., Mark Cepelak, Jerry F. Cepelak, and Shirley J. Cepelak (Cepelaks) object.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and the standing order of reference entered by the U.S. District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND

On March 13, 1998 the Debtors filed a Chapter 7 Petition, Schedules, and Statement of Financial Affairs. On Schedule C (Property Claimed As Exempt), Debtors claimed Lots 1, 2, 3, 6, 7, 8, 9, and 10 of Block 2, Davis Addition, Town of Union, Union Corp., Hardin County, Iowa exempt pursuant to Iowa Code §§ 561.2 and 561.16.[1] Debtors indicated their homestead exemption was worth $27,904.50. On Schedule F (Creditors Holding Unsecured Nonpriority Claims), Debtors indicated they owed the Cepelaks $27,000.00 as a result of a Judgment obtained in Case No. 78–083–196 in the Iowa District Court for Hardin County.

On May 19, 1998 the Cepelaks objected to the Debtors' homestead exemption. They attached seven exhibits to their objection. (Objection to Property Claimed as Exempt—Docket # 6.) The Cepelaks argued the exemption was contrary to Iowa Code § 561.1 because the lots contained buildings and appurtenances that were used in the Debtors' salvage business rather than as part of the homestead. Section 561.1 provides:

> The homestead must embrace the house used as a home by the owner, and, if the owner has two or more houses thus used, the owner may select which the owner will retain. It may contain one or more contiguous lots or tracts of land, with the building and other appurtenances thereon, habitually and in good faith used as part of the same homestead.

Iowa Code § 561.1.

The Cepelaks contended the exemption was contrary to Iowa Code § 561.2 because the lots were within a city plat and exceeded one-half acre. Section 561.2 provides:

> If within a city plat, it must not exceed one-half acre in extent, otherwise it must not contain in the aggregate more than forty acres, but if, in either case, its value is less than five hundred dollars, it may be enlarged until it reaches that amount.

Iowa Code § 561.2.

The Cepelaks maintained the exemption was contrary to Iowa Code § 561.3 because a shop, used in the Debtors' business and exceeding $300.00, was located on one of the lots. Section 561.3 provides:

> It must not embrace more than one dwelling house, or any other buildings except such as are properly appurtenant thereto, but a shop or other building situated thereon, actually used and occupied by the owner in the prosecution of

1. Hardin County is located in the Northern District of Iowa. When the petition was filed, the Debtors represented that Mr. Sears was residing in the Southern District of Iowa.

Actually, he was receiving medical care and only temporarily residing in Knoxville, Iowa. No party objected to the venue of the case.

the owner's ordinary business, and not exceeding three hundred dollars in value, is appurtenant thereto.

Iowa Code § 561.3.

On May 26, 1998 the Debtors resisted the objection. The controversy proceeded to a telephonic hearing on August 13, 1998 and then to an evidentiary hearing on September 17, 1998. At the time of the latter hearing, the parties submitted the following stipulation:

IT IS STIPULATED AND AGREED by the parties hereto for purposes of the hearing on the Debtors' claimed homestead exemption and the Objectors' Objections thereto as follows:

The property claimed as an exempt homestead by Donald and Daphne Sears lies within the town plat of Davis Addition to Union, Iowa.

Exhibit 1 is a copy of the Hardin County Auditor's aerial plat of Block 2 of Davis Addition to the City of Union, Iowa. The lighter (blue) "X" marks the location of the Sears' residence; the darker (red) "X" marks the location of the shop building.

Exhibit 2 is a copy of the Hardin County Auditor's plat of Block 2 of Davis Addition to the City of Union, Iowa.

Exhibit 6 is a true and correct copy of the Answer of Donald D. Sears and Daphne A. Sears to Interrogatory No. 10 in Cepelak, et al. vs. Sears, et al., Hardin County Case No. 78–083–196 and may be received in evidence in this proceeding.

Relevant portions of the deposition of Donald D. Sears taken November 6, 1996 in Hardin County Case No. 78–083–196 may be received in evidence in this proceeding without further foundation.

Each lot in Block 2 of Davis Addition is 66 feet wide and 132 feet deep, encompassing an area of 8,712 square feet or two-tenths of an acre. The eight lots claimed as exempt have a total area of 69,696 square feet, or 1.6 acres.

At all material times the house located on Lot 3 has been used as a home by Donald and Daphne Sears, who have resided together as a single household unit. A shop used to conduct a repair and salvage business is located on the West ½ of Lot 2. The shop was built in 1969, measures 42 feet by 30 feet, has 12–foot ceilings, two 12–foot doors and a cement floor. The value of the shop is more than three hundred dollars.

(Exhibit 8.)

The Debtors attempted to counter the ramification of the stipulation vis-a-vis section 561.2 by contending they were entitled to claim separate homestead exemptions in the property in issue, meaning together they could exempt one acre from the bankruptcy estate. Given the straightforward language of Iowa Code § 561.16,[2] the Court found instead that the Debtors were residing together as a single household unit and were not entitled to double the limitations of the Iowa homestead exemption statute.[3] Accordingly, the Court generally sustained the Cepelaks' objection

---

**2.** Iowa Code § 561.16 provides:

The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary. Persons who reside together as a single household unit are entitled to claim in the aggregate only one homestead to be exempt from judicial sale. A single person may claim only one homestead to be exempt from judicial sale. For purposes of this section *"household unit"* means all persons of whatever ages, whether or not related, who habitually reside together in the same household as a group.

Iowa Code § 561.16 (emphasis in the statute).

**3.** In *Matter of Ackerman,* No. 87002463–W J, slip op. at 4 (S.D.Iowa Feb. 2, 1988), the Court allowed the joint debtors to stack their respective Iowa Code § 627.6(9)(b) exemption in a vehicle they owned jointly. *That statute provides:*

*A debtor* who is a resident of this state may hold exempt from execution the following property:

. . . .

9. Any combination of the following, not to exceed a value of five thousand dollars in the aggregate.

. . . .

b. One motor vehicle.

but gave the Debtors an opportunity to amend their Schedule C to claim a homestead exemption within the confines of the Iowa exemption statutes. The Court entered a minute order to that effect on September 17, 1998.

On October 2, 1998 the Debtors amended their homestead exemption claim by choosing Lot 3, Lot 2, and the contiguous portion of Lot 1 to the extent it did not exceed the one-half acre limitation. The Debtors indicated their homestead exemption claim included all buildings on the indicated land and the $300.00 exempt value of the Shop.[4]

On October 15, 1998 the Cepelaks objected to the Debtors' amended homestead exemption claim. They attached copies of previously submitted Exhibits 1, 2, 6 and 8. (Objection to Amended Homestead Exemption Claim—Docket # 22.)[5] The Cepelaks argue that the West ½ of Lot 2, that is otherwise contiguous to Lot 3 on which the Debtors' home is located, contains a shop that is used in the Debtors' salvage business, and the shop is worth more than $300.00. Therefore, they maintain that the West ½ of Lot 2 is not properly part of the homestead exemption and that, in turn, means the East ½ of Lot 2 and the West ½ of Lot 1 are not contiguous to Lot 3. In addition, the Cepelaks contend the East ½ of Lot 2 contains two garages that the Debtors utilize to store parts used in their salvage business and Lot 1 may contain a hog house and brooder house that are also used for storage in the Debtors' business. They also suggest that the Debtors' claim in the West ½ of Lot 1 will bisect an existing residence and garage on Lot 1.

On October 19, 1998 the Debtors filed a nonspecific objection to the Cepelaks' objection to their amended claim of homestead exemption. The controversy proceeded to a telephonic hearing on December 8, 1998 and to an evidentiary hearing on February 1, 1999. The testimony at the latter hearing was generally consistent with the September 17, 1998 stipulation (Exhibit 8) and with the following relevant portion of Debtors' Answer to Interrogatory 10:

There are approximately 20 buildings located on the premises. Attached hereto is a drawing showing said buildings numbered 1–20. The following is a description and the use of each:

1. This is the residence where Donald D. and Daphne E. Sears live. It was originally on the property when the property was acquired. It is permanently affixed to the real estate and is in good condition.

2. This is Don's shop, which was built on the residence a few years after the residence was acquired. It is permanently affixed to the real estate and is in good condition.

3. and 4. These are both one-car garages. They are used for the storage of parts, including tires and hydraulic parts. They were moved onto the premises in 1985 and 1987, respectively.

5. This is a residence used for storage. It was on the property when Don acquired it.

6. This is a one-car garage, which was on the property when Don acquired it. Daphne Sears keeps her car in this garage.

7. and 8. These are a hog house and brooder house, moved onto the property in 1977, which Don uses for storage.

(Exhibit 6 at 1–2.) Mr. Sears' testimony varies from the statements about storage insofar as he represented that all the buildings, not just the Debtors' home and

---

Iowa Code § 561.16 (emphasis added).

**4.** The Debtors suggest the Court ruled on the merits of the Cepelaks' objection to the shop at the time of the September 17, 1998 hearing. Though the Court made a specific ruling on the extent and value of the land, the Court's other observations were preliminary in nature and intended to suggest ways the remaining exemption controversy might be analyzed and resolved.

**5.** Exhibits 1 and 2, and page 3 of Exhibit 6 are attached to this decision.

Mrs. Sears' garage, were used as part of the homestead. By way of contrast, the Court observes the Debtors made specific reference to family items being in some of the following buildings that are not in issue:

9. This is a storage shed, which Don moved onto the property in 1978. It is also used for storage.

10. This is a one-car garage, which Don moved onto the property in 1982. It is used for storage.

11. This is a quonset garage, which Don moved onto the property in 1990. He keep his lawn mowing equipment and other items stored in this building.

12. This is a wash house which Don moved onto the property in 1980, and which is used for storage.

13. and 14. These are hog sheds which Don moved onto the property in 1981 and 1984, respectively. They are used for storage.

15. This is a wash house which was on the property when Don originally acquired it. It is used for storage and for garden supplies.

16. This is a residence, which was on the property when Don acquired it. Both the wash house (building 15) and this residence are affixed to the real estate. This house is used for storage, specifically including furniture, family dishes, washing machine and refrigerator.

17. This is a one-car garage which Don moved onto the property in 1976. It is used for storage.

18. This is a grain bin which was moved onto the property in 1979. Don uses it for storage.

19. This a one-car garage which Don moved onto the property in 1977. He keeps a tractor in it.

20. This is a hog house which Don moved onto the property in 1976. It is used for storage.

The two buildings which were formerly residences (buildings 5 and 16) were last occupied as a residence in accordance with the testimony of Donald D. Sears during his deposition given November 6, 1996.

(Exhibit 6 at 2.)

As for the shop, Mr. Sears added it was approximately 15 feet from the home and there was an electrical line running between the two buildings. Water and sewer lines serviced both. He estimated the shop was worth close to $1,000.00. Aside from a passing reference to work on hobbies, Mr. Sears' testimony left the impression he used the shop primarily to conduct the Debtors' repair and salvage business.

As for Lots 1, 2 and 3, Mr. Sears testified they were contiguous and without barriers. He pointed out that the Davis Street address included those lots.

On September 2 and 29, 1999, the Court further considered the exemption controversy in conjunction with the trial on the Cepelaks' complaint to determine dischargeability and their objection to discharge.[6] On the former date, the Cepelaks presented a video of the premises in question.

## DISCUSSION

Pursuant to Federal Rule of Bankruptcy Procedure 4003(c),[7] the Cepelaks bear the burden of proving the issues

---

6. On September 29, 1999 the Court entered bench rulings dismissing the complaint to determine dischargeability and sustaining the objection to discharge. Judgment to that effect was entered on September 30, 1999. Debtors filed an appeal. The Cepelaks filed a cross appeal.

7. Federal Rule of Bankruptcy Procedure 4003(c) provides:

(c) Burden of Proof. In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.
Fed. R. Bankr.P. 4003(c).

raised in their objection to the amended claim of exemption. Iowa has opted out of the federal exemption scheme. Iowa Code § 627.10. Therefore, the Court turns to state law to resolve the pending controversy. *In re Breuer*, 68 B.R. 48, 50 (Bankr. N.D.Iowa 1985).[8] That Courts must construe exemption statutes liberally is a well-settled proposition. *Frudden Lumber Co. v. Clifton*, 183 N.W.2d 201, 203 (Iowa 1971). Yet, Courts must exercise care not to depart substantially from the express language of the statute or to extend the legislative grant. *Matter of Hahn*, 5 B.R. 242, 244 (Bankr.S.D.Iowa 1980), *citing Wertz v. Hale*, 212 Iowa 294, 234 N.W. 534 (1931) and *Iowa Methodist Hospital v. Long*, 234 Iowa 843, 12 N.W.2d 171 (1943).

The most recent state court decision addressing sections 561.1 and 561.3 is *In re Sueppel's Estate*, 255 Iowa 974, 124 N.W.2d 154 (1963). In that case, the Iowa Supreme Court held the probate court correctly included a barn, a corn crib and machine shed, a 12' by 14' feed house, and three farrowing houses in the homestead despite the fact the appurtenances were worth more than the dollar limitation in section 561.3. In reaching that conclusion, the appellate court observed:

> Appurtenance, according to Black's Law Dictionary, 4th Ed., means "That which belongs to something else: something annexed to another thing more worthy as principal and which passes as incident to it". A thing is "appurtenant" to something else only when it stands in relation of an incident to a principal and is necessarily connected with the use and enjoyment of the latter. *Catterall v. Pulis*, 137 Okl. 86, 278 P. 292, 294. Webster defines it as "annexed or pertaining to some more important thing". Under these definitions of appurtenance there can be no question but that the barn, sheds and farrowing houses must be deemed as appurtenant to the use of the farm, 40 acres, as a homestead, and pass with the land free of the owner's debts, unless Section 561.3 places a value limitation thereon. Section 561.3 provides for the house and other buildings properly appurtenant thereto as being embraced in the homestead and further provides that a shop or other building situated thereon (homestead) actually used by the owner in the prosecution of his ordinary business of a value not to exceed three hundred dollars, is appurtenant to the homestead.
>
> It will be noted that Section 561.1 requires that the appurtenances must be such as are habitually and in good faith used as a part of the homestead. Section 561.3 refers, in addition to buildings properly appurtenant to the homestead, to a building, though located on the homestead tract, which is used by the owner in the prosecution of his ordinary business, as contrasted with use as a part of the homestead. It specifically makes such building appurtenant to the homestead, where otherwise it clearly would not be and places a three hundred dollar valuation allowance thereon. We have no such a situation here and hold that the three hundred dollar valuation limitation in Section 561.3, does not apply where the buildings, etc., in question are clearly appurtenant to the homestead.

255 Iowa at 977–78, 124 N.W.2d at 157. It is important to note that the appellate court also affirmed the trial court's conclusion that rental of the farm land on a crop share basis did not amount to an abandonment of the homestead. 255 Iowa at 975, 124 N.W.2d at 155. The Iowa Supreme Court does not explain how the structures in question were habitually and in good faith used as part of the homestead in addition to (or as opposed to) being used by the party renting the land. The decision does not clarify whether the crop share arrangement put food directly on the table of the farm homestead or if it was

---

8. Under Iowa caselaw, the Cepelaks would also bear the burden of proving the exemption is not properly claimed. *See Olsen v. Lohman*, 234 Iowa 580, 592, 13 N.W.2d 332, 339–40 (Iowa 1944) (holding creditor has burden of establishing room was not part of homestead).

limited to providing a source of farm income.

If one reads the *Sueppel* decision to permit a farm homestead to contain buildings that are used both for farming as a business and for farming as a self-sufficient way of life, one might argue the rationale should extend to cases in which the evidence establishes a commingled use of buildings regardless of whether the homestead was within or without a city plat and regardless of the owner's ordinary business. This Court, however, declines to apply *Sueppel* to the facts of this case because to do so would depart substantially from the express language of the statute and would extend the legislative grant.[9]

Accordingly, the Court now turns to an analysis of the facts in light of the statutory language and controlling state case law.

### Lot 3 and Building 1 (Residence)

■ There is no dispute as to Lot 3 and Building 1. In accordance with section 561.1, the lot contains the house used as a home by the Debtors. In keeping with section 561.2, Lot 1 lies within a city plat and covers approximately .2 acre. Lot 3 and Building 1 are exempt from the bankruptcy estate.

### Lot 2, Building 2 (Shop), and Buildings 3 and 4 (One–Car Garages)[10]

In accordance with section 561.1, the Debtors' homestead exemption may contain Lot 2 if that lot is contiguous to Lot 3. According to Exhibits 1 and 2 and page 3 of Exhibit 6, the entire West border of Lot 2 is contiguous to the entire East border of Lot 3. In keeping with section 561.2, Lot 2 lies within a city plat and covers approximately .2 acre. Together, Lots 2 and 3 do not exceed one-half acre.

In accordance with section 561.1, the Debtors' homestead exemption may include the shop and the garages if those buildings are appurtenant to the house used as a home by the Debtors. The evidence, however, does not support such a finding. In Exhibit 8, the Debtors admit they use the shop to conduct a repair and salvage business. Mr. Sears testified he so used Building 2. Also in Exhibit 6, the Debtors acknowledge both one-car garages are used for the storage of parts, including tires and hydraulic parts. The Court does not give any weight to Mr. Sears' contrary and self-serving testimony that these buildings were maintained as part of the Debtors' household. Furthermore, assuming the Debtors did store some family items with the business items in all of these buildings, the Court declines to hold such prepetition practice is contemplated by section 561.1.

■ Nevertheless, in accordance with section 561.3, the Debtors' homestead exemption may embrace either the shop or one of the garages as long as the building is used and occupied by the Debtors in the prosecution of their ordinary business and is worth no more than $300.00. This "appurtenance wildcard" is limited to one building. *Shaffer Bros. v. Chernyk*, 130 Iowa 686, 107 N.W. 801 (1906).

■ The shop is used in the prosecution of the Debtors' repair and salvage business; however, the parties stipulated Building 2 is worth more than $300.00 and Mr. Sears testified it might be worth $1,000.00. Clearly, the homestead exemption does not embrace the shop.

■ Parenthetically, the Court points out that the $300.00 limitation has been on the books since 1851.[11] Even though fed-

---

9. The *Sueppel* decision makes passing reference to *Olsen v. Lohman*, 234 Iowa 580, 13 N.W.2d 332 (1944). In that case, the Iowa Supreme Court seemingly accepts that the homestead exemption extends to use of the homestead to generate income but cautions that its ruling is not without limitation. 234 Iowa at 596–97, 13 N.W.2d at 340.

10. Exhibits 1 and 2, and page 3 of Exhibit 6 are not models of clarity and consistency. It may be that one of the garages is actually located on Lot 1.

11. Iowa Code § 1253 (1851); § 2285 (1860) (revision); § 1997 (1873); § 3172 (1888) (McClain's); § 2978 (1897); Act of 1900 (28 G.A.) ch. 119, § 1 (1900); Code Supp. § 2978

eral bankruptcy courts are courts of equity, this Court may not discount the $300.00 cap to permit the exemption to be as meaningful today as it was so many years ago.[12] Only the Iowa legislature has the power to do that.

Both garages are used in the prosecution of Debtors' repair and salvage business; however, there is no specific evidence regarding their value. In Exhibit 6, the Debtors indicate the garage, identified as Building 3, was moved onto Lot 2 in 1985 and the garage, identified as Building 4, was moved onto that lot in 1987. The video presentation of the Debtors' property left the court with the impression that neither garage would be worth more than $300.00. The Cepelaks have failed to establish otherwise. Accordingly, the homestead exemption may embrace one of the garages on Lot 2.

The Cepelaks cite *Groneweg v. Beck*, 93 Iowa 717, 62 N.W. 31 (1895) in support of their contention that the land on which a nonexempt building stands is also not exempt. In that case, the Iowa Supreme Court affirmed the trial court's determination "that Beck had an exempt homestead in all of the buildings upon the lot except a back building, called an 'annex,' and the ground upon which the same stands." 93 Iowa at 718, 62 N.W. at 32. The appellate court's discussion regarding the annex portion of the appeal is limited to the following paragraph:

> Beck appealed from that part of the order or judgment which held that the annex, or one-story part, of the building was not exempt as part of the homestead. There is no valid objection to this part of the judgment. The "annex," as it is called, was not necessary to the use and enjoyment of the homestead. It had an independent entrance from the side street, and might be detached and removed without in any manner restricting or interfering with the homestead occupancy.

93 Iowa at 720, 62 N.W. at 32. The quoted material does not specifically address the land upon which the annex stood. Moreover one might read the fourth sentence to suggest that land was exempt because the annex could be detached and removed. However, this Court cannot conclude with any certainty that the summary of the trial court's ruling was inartfully stated, meaning "same stands" should have been "same stand" to refer to the other buildings rather than the annex.

As written, the decision will not permit a distinction to be made between a permanently attached building and an otherwise free-standing building.[13] Pursuant to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court must follow the *Groneweg* decision. Only the Iowa Supreme Court may modify or reject that ruling in a subsequent case. Therefore, in addition to the land upon which the shop is permanently affixed, the homestead exemption does not include that portion of Lot 2 upon which the nonexempt garage stands.

(1913); Act of 1923 (40 G.A.) ch. 237, § 2 (1923); Iowa Code § 10137 (1924), (1927), (1931), (1935), (1939).

12. The Court has been unable to locate any general provision in the Iowa Code that would permit adjustment of dollar amounts. *Compare* 11 U.S.C. § 104 (providing for adjustment of certain dollar amounts in Title 11 and in section 1930 of Title 28 of the United States Code).

13. In *Duffy v. Tegeler*, 19 F.2d 305 (8th Cir. 1927), the Court of Appeals for the Eighth Circuit considered this issue on appeal from the United States District Court for the Northern District of Iowa. Without mentioning the *Groneweg* case or any Iowa state court decision, the federal appellate court affirmed the federal trial court's holding that nonexempt buildings did not impart their nonexempt character to the land upon which they stood because they were temporary structures that could be removed without damaging the land and without suffering depreciation. *Id.* at 307. It should be noted that the number of buildings used and occupied by the owner in the prosecution of his ordinary business was not in issue on appeal.

This ruling does not mean that Lot 2 is not contiguous to Lot 3. The Cepelaks do not cite any authority in support of their argument that the entire West ½ of Lot 2 is not exempt because the shop and the land upon which the shop stands are not exempt. Though an easement through Lot 2 to Davis Street might be necessary if a right of way through Lot 9 to Maple Street is not available or sufficient, the shop does not cover the entire West ½ of Lot 2. Likewise, though a similar easement might be necessary for the nonexempt garage, the nonexempt garage does not cover the entire East ½ of Lot 2.

Furthermore, it does not appear from the record presented that the shop is affixed along a portion of the border between Lots 2 and 3. Even if it were, neither section 561.1 nor any case law interpreting that statute suggests the entire border between adjoining lots must be contiguous in order for a portion of one lot to be contiguous to the other lot. Black's Law Dictionary (7th ed.) defines "contiguous" for the context under consideration as "[t]ouching at a point or along a boundary." There is sufficient contact between Lot 3 and Lot 2 to permit all but the land upon which the shop and the nonexempt garage stand to be held exempt.

*Lot 1, Building 5 (Residence), Building 6 (One–Car Garage), Building 7 (Hog House) and Building 8 (Brooder House)* [14]

In accordance with section 561.1, the Debtors' homestead exemption may contain Lot 1 if that lot is contiguous to Lot 2. According to Exhibits 1 and 2 and page 3 of Exhibit 6, the entire West border of Lot 1 is contiguous to the entire East border of Lot 2. In keeping with section 561.2, Lot 1 lies within a city plat and covers approximately .2 acre. Together, Lots 1, 2 and 3 exceed one-half acre. The Debtors' homestead exemption may not embrace the excess land.

In accordance with section 561.1, the Debtors' homestead exemption may include the residence, the one-car garage, the hog house, and the brooder house if those buildings are appurtenant to the house used as a home by the Debtors. The evidence supports such a finding only for the one-car garage. In Exhibit 6, the Debtors indicate they use the residence for storage, the one-car garage houses Mrs. Sears' car, and Mr. Sears uses the hog house and the brooder house for storage. With the exception of Building 6, the Court does not give any weight to Mr. Sears' contrary and self-serving testimony that these buildings were maintained as part of the Debtors' household. Again, assuming the Debtors did store some family items with the business items in all of these buildings, the Court declines to hold such prepetition practice is contemplated by section 561.1.

Nevertheless, in accordance with section 561.3, the Debtors' homestead exemption may embrace either the residence, the hog house or the brooder house if the Debtors do not exempt one of the garages on Lot 2 and if the building is used and occupied by the Debtors in the prosecution of their ordinary business and is worth no more than $300.00. In Exhibit 6, the Debtors indicate that the residence was on Lot 1 when Mr. Sears purchased it. There is no specific evidence as to its value but the video presentation left the Court with the impression that it would, at a minimum, be worth more than $300.00. Accordingly, the homestead does not embrace Building 5.

In Exhibit 6, the Debtors indicate that Buildings 7 and 8 were moved onto Lot 1 in 1977. The record contains no specific evidence with respect to the value of the hog house and brooder house. The video presentation of the Debtors' proper-

---

**14.** The attached exhibits defy conclusive findings with respect to the location of the hog house and the brooder house. The rulings made with respect to Buildings 7 and 8 do not apply if those structures are located on a lot other than Lots 1, 2 and 3.

ty left the court with the impression that neither structure would be worth more than $300.00. The Cepelaks have failed to establish otherwise. Accordingly, the homestead exemption may embrace either the hog house or the brooder house in lieu of the exempt garage on Lot 2.

In Exhibit 6, the Debtors did not indicate that the residence, the hog house and the brooder house were permanently affixed to the real estate. However, given the *Groneweg* case, that is of no consequence. Unless the Debtors claim the hog house or the brooder house exempt, the portion of Lot 1 upon which both those structures stand will not be exempt along with the portion of the land upon which the nonexempt residence stands.

This ruling does not mean that Lot 1 is not contiguous to Lot 2. Though easements might be necessary for the nonexempt buildings, the buildings do not cover the entire West ½ of Lot 1. Regardless of the actual location of the structures along the border between Lot 1 and Lot 2, there is sufficient contact between the lots to permit all but the land upon which the nonexempt structures stand to be held exempt as long as that portion of Lot 1 will not cause the total exemption to exceed one-half acre.

The Cepelaks do not explain their argument that the Debtors' exemption claim in Lot 1 will cut through the residence and the garage. The Debtors did not claim the West ½ of Lot 1 per se. The rulings with respect to this part of the decision may require platting. Even though that may mean the resulting parcels will have less value than if the lot remained intact, the rulings comport with this Court's duty to liberally construe the exemption statute without departing from the language of the statute or extending the legislative grant.

## CONCLUSION

WHEREFORE, the Court finds:

(1) The Debtors' homestead exemption embraces Building 1 (Debtors' home) and Building 6 (Daphne Alice Sears' garage), and may embrace either Building 3 or Building 4 (one-car garages) on Lot 2 or Building 7 (Hog House) or Building 8 (Brooder House) on Lot 1;

(2) The Debtors homestead exemption does not embrace Building 2 (Shop), Building 5 (another house), or Buildings 3, 4, 7 and 8—except that the Debtors may claim one of the latter four buildings exempt pursuant to the above ruling; and

(3) Subject to the one-half acre limitation and excluding the land upon which the nonexempt buildings stand, the Debtors' homestead exemption contains Lots 1, 2 and 3.

A separate Order shall be entered accordingly.

EXHIBIT

1st

ST.

66

66

132

132

ADD.

Donald, Dalpne Sears
E00-1-3-84
589-330

Donald & Daphne M Sears
1-4-71

Donald A. Sears
9-6-76

Donald D. Daphne A. Sears
8-004
507-260

Iva M. Ellis
3-23-65
10-29-84

435-36
C00

100-5

433 2

10

9

7

6

5

4

66

99

99

99

66

110

77

132

77

66

66

330

132

132

132

1st

74 K
18-63
66

Teske
10-007
8-70
56

132

132

1

EXHIBIT
2

894

E

DAVIS STREET

MAPLE STREET

S

W

5

6

7

8

9

10

4

3

2

11

12

13

1

14

20  19  18  17

15

EXHIBIT
6, p. 3

16